E-FILED
Thursday, 16 May, 2019  04:27:30 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| RIKKI GUAJARDO, on behalf of herself, and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>SKECHERS USA, INC.,<br><br>     Defendant. | Case No.:_____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

Plaintiff Guajardo, on behalf of herself and all others similarly situated, brings this action against Defendant Skechers USA, Inc.  Plaintiff's allegations herein are based upon personal knowledge as to her own acts and experiences in this matter, the investigation of counsel, and upon information and belief as to other matters.

## SUMMARY OF CASE

1.  This action involves Skechers's design, development, manufacture, marketing, distribution and sale of dangerous and defective children's footwear with light up features.

2.  Skechers is a multi-billion-dollar, self-described global leader in the footwear industry, and has invested and spent hundreds of millions of dollars creating and promoting its shoe designs.

3.  Skechers designs, develops, manufactures, markets, distributes and sells a diverse range of lifestyle footwear for men, women, and children, as well as performance footwear for men and women.

784233.1

4.   This class action involves Skechers children's footwear featuring S-Lights and rechargeable technology including, but not limited to, Skechers Energy Lights shoes, S Light Shoes, Twinkle Toes and Shopkins shoes. ("Lighted Shoes").

5.   The Lighted Shoes were distributed and sold with a number of substandard design or manufacturing defects that create a serious safety hazard.

6.   The Lighted Shoes contain a number of design or manufacturing flaws including, without limitation, an inadequate electrical system powered by batteries, which can lead to multiple failure modes, including a dangerous electrical or thermal event that can lead to heat, fire or the release of electrolyte vapors that can cause skin burns (the "Defect").

7.   At all relevant times, Skechers knew or should have known of the Defect, but nevertheless misrepresented to consumers that the Lighted Shoes were safe for their children to wear, when they were not.

8.   Skechers actively concealed and failed to disclose the Defect to Plaintiff and Class Members.  AS a direct and proximate result of Skechers' unlawful conduct, including its misrepresentations and, concealment regarding the inherent safety risk posed by the Defect in the Lighted Shoes, and its failure to recall the Lighted Shoes or remedy the Defect, Plaintiff and all Class Members purchased and used the dangerous and defective Lighted Shoes when they otherwise would have paid significantly less for the Lighted Shoes, or else would not have purchased and used them at all.

9.   Plaintiff Guajardo purchased the Lighted Shoes for her child upon the reasonable belief that they were safe and would function as intended.  Plaintiff was unaware of the Defect at the time she purchased the Lighted Shoes, and would not have purchased the Lighted Shoes or paid as much for them had they been aware of the Defect.  Following Plaintiff's purchase, the Lighted

784233.1

Shoes failed as a result of the Defect, causing persistent personal injuries, including swelling, burning, blistering and pain.  Following these injuries, Plaintiff contacted Skechers to no avail, as she was merely instructed to return the defective Lighted Shoes to the retailer where the shoes were purchased.

10. Plaintiff's and all Class Members' Lighted Shoes contain the same Defect, posing the same substantial safety risk to consumers and the public.  Skechers Lighted Shoes cannot be used safely for their intended purpose of children's footwear.

## PARTIES

11. Plaintiff Guajardo is and was at all times relevant to this matter a resident and citizen of Spring Valley, Illinois.

12. Defendant Skechers U.S.A., Inc. is a corporation duly organized and existing under the laws of the State of Delaware with a principal place of business located at 228 Manhattan Beach Blvd., Manhattan Beach, California 90266.

13. At all times relevant to this action, Skechers designed, manufactured, marketed, distributed and warranted the Light Up Shoes at issue in this litigation in the state of Illinois and throughout the United States.

## JURISDICTION AND VENUE

14. This Court has personal jurisdiction over Skechers in this matter.  The acts and omissions giving rise to this action occurred in the state of Illinois.  Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold products, committed a statutory violation within this state related to the

3

allegations made herein, and caused injuries to Plaintiff and putative Class Members, which arose out of the acts and omissions that occurred in the state of Illinois, during the relevant time period, at which time Defendant was engaged in business activities in the state of Illinois.

15. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because : (i) there are 100 or more putative Class Members, (ii) there is an aggregate amount in controversy exceeding $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different states.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

16. Venue is proper in this District under 28 U.S.C. § 1391 because Skechers conducts business in this District and has intentionally availed itself of the laws and markets within this District.

## FACTUAL ALLEGATIONS

### *Skechers Marketing and Advertising of Children's Footwear*

17. Skechers is a multi-billion-dollar footwear company that describes itself as a "leading kids footwear brand," with approximately 13% of its production including children's footwear.[1]

18. Skechers' products are available in the United States and more than 160 countries and territories worldwide, with more than 2,400 Skechers-branded retail stores, and on Skechers' e-commerce websites.

19. Skechers' products, packaging, and advertising prominently display one or more of the trademarks and/or brands, clearly designating Skechers as the source of the footwear. Skechers'

---

[1] https://d1io3yog0oux5.cloudfront.net/_b94dbdc5941f18e34b0fcc13a54b894f/skx/db/437/3002/annual_report/2016_AR.pdf, Skechers Annual Report 2016 (last visited May 16, 2019).

products, packaging, and advertising also describe the products' features, objectives and purposes (such as lighted footwear).

20. Skechers is a sophisticated company and knows that when it comes to marketing and advertising, words and packaging design matter.  With this knowledge, Skechers takes an aggressive approach to marketing, regularly developing new print and TV campaigns for its footwear lines, and has directed this marketing and advertising to children.

21. Skechers places a large emphasis on its children's footwear, and has engaged in a dedicated marketing campaign to convince parents, and their children, to purchase its footwear:

> As our SKECHERS Kids business grows, we continue to create captivating commercials that capitalize on the success of our animated characters, all of whom appear in their own television advertising campaigns on the leading children's networks. Twinkle Toes, Luminator, Sporty Shorty, Pretty Tall, Kewl Breeze, Z-Strap and Elastika are recognizable – and have perpetuated the strong on-going demand for our kids' footwear.
>
> We believe the star power of these animated characters and celebrities who are representing our brands will build sales, drive purchase intent and further leverage our business around the world.[2]
>
> ***
>
> While we capitalize on [celebrities] in every marketing medium – including a 200-foot billboard overlooking one of the most

---

[2]https://d1io3yog0oux5.cloudfront.net/_b94dbdc5941f18e34b0fcc13a54b894f/skx/db/437/2978/annual_report/2010+Annual+Report.pdf, Skechers Annual Report 2010 (last visited May 16, 2019).

trafficked freeways in the country, we also have our own animated

stars thanks to clever kids' commercials that air on the most popular

children's networks. Younger kids now seek out Twinkle Toes,

Luminator, Kewl Breeze, Super-Z and Sporty Shorty as much as

their favorite superheroes.[3]

22. Skechers knows that its Lighted Shoes have captured the attention of both parents and their

children:

Lights, comfort, action! Skechers are bright and bold toys for

children's feet: made with the latest looks and technology for racing,

leaping and jumping boys and girls.[4]

***

Skechers' extensive collection spans a broad range of boys and girls

styles that feature lights, colors and creative concepts that grab the

attention of kids while the quality constructions and proven comfort

features appeal to parents. It's a winning formula in children's

footwear design.[5]

***

With kids, we always take the approach of combining comfort,

color, and fun. With further innovation, we developed more lighted

styles for children—some of which we even sized up to tweens. And

---

[3] *Id.*
[4] https://about.skechers.com/brand (last visited May 16 2019).
[5] https://investors.skechers.com/press-releases/detail/311/skechers-kids-wins-design-excellence-award-from-footwear (last visited May 16, 2019).

784233.1

we, of course, advertised these styles with entertaining television commercials.[6]

***

MARKETING TO THE WORLD… [that] [r]eaches kids with captivating commercials, starring our animated characters Twinkle Toes, Luminator, Kewl Breeze, Z-Strap, Bella Ballerina, and Sporty Shorty.[7]

## MECHANICS OF THE DEFECT

23. The Skechers Kids line includes various types of Lighted footwear: "Skechers' lighted footwear collection for boys and girls includes multiple categories, featuring S-Lights and rechargeable technology with brands like Energy Lights by Skechers footwear. S-Lights combine patterns of lights on the outsoles and sides of the shoes, while Energy Lights by Skechers is a classic high-top or low-top sneaker with a rechargeable lighted outsole that features a variety of colors and light."[8]

24. Skechers has sold hundreds of thousands, and possibly millions, of the Lighted Shoes throughout the United States.

25. The Lighted Shoes were distributed and sold with a number of substandard design and manufacturing defects that have caused a serious safety hazard.

---

[6]https://d1io3yog0oux5.cloudfront.net/_b94dbdc5941f18e34b0fcc13a54b894f/skx/db/437/3002/annual_report/2016_AR.pdf, Skechers Annual Report 2016 (last visited May 16, 2019).
[7]https://d1io3yog0oux5.cloudfront.net/_b94dbdc5941f18e34b0fcc13a54b894f/skx/db/437/2982/annual_report/2011+Annual_Report.pdf (emphasis added), Skechers Annual Report 2011 (last visited May 16, 2019).

[8]https://d1io3yog0oux5.cloudfront.net/_b94dbdc5941f18e34b0fcc13a54b894f/skx/db/437/3006/annual_report/2017_ANNUAL_REPORT.pdf, Skechers Annual Report 2017 (last visited May 16, 2019).

784233.1

26. The Lighted Shoes contain an electrical system powered by a battery which requires the appropriate due-diligence to protect against common failure modes, and which Skechers has failed to follow.

27. The **Twinkle Toes Lighted Shoes, Shopkins Lighted Shoes and S-Lights Shoes** contain either one or two non-rechargeable Coin Cell batteries, which is a Primary Lithium Manganese Oxide (LiMnO2) battery with the designation "CR2032," which can provide energy for a thermal event when shorted and/or release electrolyte vapor which can result in skin burns and/or itching.

28. The **Energy Lights Lighted Shoes** contain a pouch cell battery, a Lithium Polymer rechargeable battery, which is a <u>flammable battery</u> that can provide energy for a thermal event in certain conditions.

29. All of the Lighted Shoes contain an electrical system that in certain conditions can be impacted by a partial or full short-circuit condition that can lead to failure modes.

30. All of the Lighted Shoe contains inadequate mechanical protection. As the products are used by children in a number of everyday situations (i.e. playgrounds with wood-chips), there is inadequate mechanical protection against penetration from sharp wood-chips and other objects that are common in the environment where the Lighted Shoes will be used.

31. Further, the design of the Lighted Shoes is not sufficiently robust to prevent moisture and contamination (i.e. sweat or water from children jumping in puddles), allowing opportunities for contamination of the battery cell and also paths to create a partial short-circuit in either the battery, wiring and/or circuit card electronics that can lead to a thermal event.

32. This is incredibly dangerous as inadequate robustness against moisture intrusion could result in a battery short-circuit which could generate heat, fire, or release of electrolyte vapors which could result in burns when in contact with skin.

784233.1

33. Further, the wiring in the Lighted Shoes is sub-par and has the potential to short together to cause an electrical and/or thermal event. With typical wiring practices in many industries, wires will be fixed channels or "conduit" that forms a protective shell or insulation layer around the wires. This is even more critical in applications where the wires are under compression, such as the Lighted Shoes, as it is proper design to prevent conditions to where the insulation can be compromised due to compression and possible flexing and result in a short circuit.

34. The design of the Lighted shoes does to prevent these conditions as it allows for bends and overlaps in the wiring which can lead to shorts. Shorting the wires together can create a partial or full short-circuit on the battery which can release electrolyte vapor, and can result in skin burns and/or fire when introduced to a spark source (i.e. the electronics card in the same assembly).

35. Moreover, the battery cell and LED driver electronics in the Lighted Shoes are packaged in a plastic box which is then "potted" or "encapsulated" (i.e. filled with a material that solidifies) presumably to prevent intrusion of moisture, salt-fog and similar contaminants. Potting or encapsulating batteries is not a safe design solution unless there is an adequate method of venting the cell in case of an internal high-pressure event. Encapsulating the battery cell can lead to an explosion rather than a controlled release of internal pressure. Further, encapsulation of this type of battery is not recommended per the manufacturers MSDS, which states: "Mechanical Containment: If potting or sealing the battery in an airtight or watertight container is required, consult your Tuobu Battery Limited representative for precautionary suggestions. Do not obstruct safety release vents on batteries. Encapsulation of batteries will not allow cell venting and can cause high pressure rupture." An exploding battery can result in fire or skin burns due to contact with electrolyte vapor.

784233.1

36. In addition, there were no warning labels relating to batteries or electrical systems nor were there any instructions included with the Lighted Shoes. There was also no indication there was a Lithium Ion battery contained in the shoe, and there were no instructions or prohibitions related to the lithium battery.

37. The dangerous defect in the Lighted Shoes, which should have prevented the product from ever being distributed into the consumer market place, is further compounded by the lack of adequate warning. The lack of an adequate warning is problematic as the product contains inadequate mechanical protection, and the battery is a flammable Lithium-Ion battery. As the product used in application is by children in a number of everyday situations (i.e. playgrounds w/ wood-chips), there is inadequate mechanical protection against penetration from sharp wood-chips and other objects that are common in the environment where these will be used.

## SKECHERS' KNOWLEDGE OF THE DEFECT

38. Skechers knew or should have known when it sold the Lighted Shoes to Plaintiffs and Class Members that the Lighted Shoes suffered from the Defect, and that this Defect caused the Lighted Shoes to function improperly during their expected useful life, represented an unreasonable risk to children, and might result in significant personal injury and/or proper damage to consumers and the public.

39. Skechers is a sophisticated footwear company that describes itself as a leader in the footwear industry, and which has the capacity to conduct quality and safety testing on its Lighted Shoes, and to understand the inherent dangers of the inadequate design and/or manufacture in the Lighted Shoes. The Lighted Shoes contain substandard packaging, wiring, moisture protection and penetration protection (from everyday objects with which children come into contact, such as playground woodchips), which can result in dangerous thermal events such as fire or skin burns.

10

784233.1

A company as sophisticated as Skechers either knew or should have known of this danger before marketing and selling the Lighted Shoes for children.

40. Skechers has certainly known about the Defect since at least 2018, when Plaintiff Collins contacted Skechers about his daughter's injuries as a result of the Lighted Shoes, at which time Skechers was put on notice of the dangerous defect in its Lighted Shoes. However, Skechers failed to take any action in response to the same and, instead, , continued to sell the Lighted Shoes, and to represent to consumers that the Lighted Shoes are safe for children.

41. For example, in response to reported injuries, including a chemical burn from one of its Lighted Shoes in or around July 2018, Skechers doubled down on its deceptive representations about the safety of its Lighted Shoes stating: "Skechers footwear products are rigorously tested for safety… Skechers, a family brand, has sold millions of pairs of children's lighted footwear worldwide and has not had one incident of chemical burns reported…" [9]

42. Contrary to Skechers' aforementioned representation, prior to July 2018, as described below, all three Plaintiffs in this action complained directly to Skechers about chemical burns to their children's feet as a result of the Skechers Light Up Shoes, and Skechers failed to adequately respond to these complaints.

43. Despite its knowledge of the Defect, Skechers did not remedy or eliminate the Defect in the Lighted Shoes or remove them from the stream of commerce.

44. In conjunction with Skechers experience designing, manufacturing and selling the Lighted Shoes, including its self-described position as a leader in the footwear marketplace that devotes

---

[9] https://www.foxnews.com/health/popular-light-up-sneakers-left-boy-with-second-degree-burns-on-feet-mom-claims, (last visited May 16, 2019).

millions of dollars to footwear design and research, Skechers knew or should have known of the defect before and at the time it distributed the Lighted Shoes into the consumer marketplace.

45. Skechers had a duty to disclose the Defect and a duty not to conceal the Defect from Plaintiffs and Class Members.

46. Despite its knowledge of the Defect, Skechers is continuing to sell the defective Lighted Shoes for children's use, while it actively misrepresents the Defect in the Lighted Shoes, conceals the Defect, fails to notify consumers of the Defect, and fails to recall the Lighted Shoes. Skechers' failure to disclose the Defect, and its active concealment of the Defect, places Plaintiffs and Class Members at risk of personal injury and/or property damage.

47. Moreover, Skechers continues to falsely represent through written warranties that the Lighted Shoes are free from defects and is of merchantable quality.

48. When corresponding with customers, including Plaintiffs, Skechers does not disclose that the Lighted Shoes suffer from the Defect. As a result, reasonable consumers, including Plaintiffs and Class Members, purchased and used, and continue to purchase and use the Lighted Shoes for their children's use even though it is unsafe to do so.

## PLAINTIFF EXPERIENCE

### Plaintiff Guajardo

49. On or about January 2018, Plaintiff Guajardo purchased a pair of Skechers Energy Lights from a Kohl's retailer located in Illinois. Plaintiff Guajardo purchased the Lighted Shoes for her son – who is six years old.

50. Based on the representations in Skechers' advertisements and packaging, Plaintiff Guajardo trusted that the Lighted Shoes were safe for her son to wear and that the product was fit for its intended purpose of children's everyday footwear.

784233.1

51. Ms. Guajardo's son wore the Lighted Shoes several times.  The first time he wore them to school, her son complained that his feet were burning due to the intense heat emanating from the back of the Lighted Shoes.  The heat was so painful and uncomfortable that Plaintiff's son had to remove his Lighted Shores at school that day, and change into another pair.  Unaware of the nature of the Defect, Plaintiff's son wore the Lighted Shoes several more times.  In one instance, the Lighted Shoes became so hot that they caused a painful heat blister on the back of his foot.

52. Following her son's injuries, Plaintiff Guajardo contacted Skechers customer service and was instructed to return the Lighted Shoes to Kohls retailer where she purchased them.  However, the retailer refused to accept the shoes because they had been worn.

53. Plaintiff Guajardo received a pair of Skechers Energy Lights that was defective at the point of sale.  Plaintiff Guajardo did not receive the benefit of her bargain as a result thereof.  Plaintiff Guajardo would not have purchased the Skechers Energy Lights shoes had she known they were defective.

54. If Plaintiff Guajardo's Lighted Shoes had functioned as advertised, Ms. Guajardo would likely purchase them in the future.  Alternatively, if the Court were to issue an injunction ordering Skechers to comply with advertising and warranty laws, Ms. Guajardo would likely purchase Lighted Shoes again in the future.

## CLASS ACTION ALLEGATIONS

55. Plaintiff Guajardo brings this action against Skechers individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following Class:

> During the fullest period allowed by law, all persons residing in
>
> Illinois who purchased the Lighted Shoes. (the "Illinois" Class).

56. Excluded from the Classes are: (a) any judge presiding over this action and members of

784233.1

their family; and (b) all officers, directors and employees of Skechers.

57. *Numerosity*: The Members of each Class are so numerous that joinder of all Members is impracticable. While the exact number of Class Members is presently unknown, each Class consists of at least thousands or hundreds of thousands of people. The exact number of Class Members can be determined by Skechers' sales information and other records.

58. *Commonality*: Common questions of law and fact exist as to all Members of each Class, including, without limitation:

    a.  Whether Lighted Shoes designed, manufactured and sold by or on behalf of Skechers suffer from the Defect;

    b.  Whether the Defect creates and unreasonable risk of harm that prevents the Lighted Shoes from being safely used for their intended purpose;

    c.  Whether Skechers knew or should have know that the Lighted Shoes suffered from the Defect at the time they were placed in the stream of commerce;

    d.  Whether Skechers engaged in deceptive or unlawful conduct when it misrepresented and concealed its knowledge of and information about the Defect;

    e.  Whether Skechers fraudulently concealed the Defect;

    f.  Whether Skechers breached express warranties relating to the Lighted Shoes;

    g.  Whether Skechers breached implied warranties relating to the Lighted Shoes;

    h.  Whether the Defect resulted from Skechers' negligence;

    i.  Whether Plaintiffs and Class Members are entitled to damages;

    j.  Whether Plaintiffs and Class Members are entitled to replacement or repair of their defective Lighted Shores; and

    k.  Whether Plaintiffs and Class Members are entitled to equitable relief, including an

784233.1

injunction requiring that Skechers engage in a corrective notice campaign and/or a recall.

59. *Typicality*: Plaintiffs have the same interest in this matter as all Class Members, and Plaintiffs' claims arise out of the same set of facts and conduct by Skechers as the claims of all Class Members. Plaintiffs' and Class Members' claims all arise out of Skechers design, manufacture, distribution, and sale of the defective Lighted Shoes that has created a significant safety risk to consumers, and from Skechers failure to disclose the Defect.

60. *Adequacy of Representation*: Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in consumer and product liability class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of the Class Members.

61. *Injunctive/Declaratory Relief*: The elements of Rule 23(b)(2) are met. Without this relief, Skechers will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the Defect. Skechers has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

62. *Predominance and Superiority*: The elements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual Class Members, and a class action is the superior method for the fair and efficient adjudication of this controversy. The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of

hundreds or thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly-situated plaintiffs.

## TOLLING OF STATUTE OF LIMITATIONS

63. *Discovery Rule*.   Plaintiffs' claims accrued upon discovery that the Lighted Shoes that Skechers designed, manufactured, and placed into the stream of commerce suffered from the Defect, and that the Defect could not be repaired.   While Skechers knew of and failed to disclose the Defect, Plaintiffs and Class Members could not and did not discover this fact through reasonable diligent investigation until after they experienced the Defect, and reasonably excluded other potential causes of the failure.

64. *Active Concealment Tolling*.   Any statutes of limitations are tolled by Skechers' knowing and active concealment of the Defect.   Skechers kept Plaintiffs and Class Members ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on the part of Plaintiffs.   The details of Skechers' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class Members.   Plaintiffs and Class Members could not reasonably have discovered the Defect.

65. *Estoppel*.   Skechers was and is under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality and nature of the Lighted Shoes.   At all relevant times, and continuing to this day, Skechers knowingly, affirmatively, and actively misrepresents and omits the true character, quality, and nature of the Lighted Shoes, including the Defect.   The details of Skechers' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class Members.   Plaintiffs and Class Members reasonably relied upon Skechers knowing and/or active omissions.   Based on the foregoing, Skechers is estopped from relying upon any statutes of limitation in defense of this action.

784233.1

66. *Equitable Tolling*.   Skechers took active steps to omit the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold the Lighted Shoes containing the Defect.  The details of Skechers efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of the Plaintiffs and Class Members.  When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims.  Skechers wrongfully omitted its deceitful acts described above.  Should it be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract/Common Law Warranty
### (Plaintiff Guajardo individually and on behalf of the Illinois Class

67. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

68. Plaintiff brings this claim individually and on behalf of the Illinois Class against Skechers. To the extent Skechers' commitment is deemed to not be a warranty under any of the aforementioned state laws, Plaintiffs plead in the alternative under common law warranty or contract law.

69. Skechers expressly warranted that the Lighted Shoes were fit for their ordinary and intended purpose for which such goods are used, including, but not limited to, children's footwear, as a result of the Defect.

70. Skechers made the foregoing and express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff, Class Members and Skechers.

71. Skechers breached the warranties and/or contract obligations by placing the Lighted Shoes into the stream of commerce, and selling them to consumers, when the Lighted Shoes contained

784233.1

the Defect, could not be worn safely and as intended, and did not have the properties they were represented to possess.

72. Due to the Lighted Shoes' Defect, they are unfit for their intended use and purpose. The Defect substantially and/or completely impairs the use and value of the Lighted Shoes.

73. The Defect existed when the Lighted Shoes left Skechers' possession or control and were sold to Plaintiff and Class Members. The Defect was not discoverable by Plaintiff and Class Members at the time they purchased the Lighted Shoes.

74. As a direct and proximate cause of Skecher's breach of warranties and/or contract, Plaintiff and Class Members were harmed because they would not have purchased the Lighted Shoes had they known the truth about the Defect.

<u>**COUNT II**</u>
<u>**Unjust Enrichment**</u>
<u>**(Plaintiff Guajardo individually and on behalf of the Illinois Class)**</u>

75. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

76.  Plaintiff brings this claim individually and on behalf of the Illinois Class against Skechers. This alternative claim is asserted on behalf of Plaintiff and Class Members to the extent there is any determination that any contracts between Class Members and Skechers do not govern the subject matter of the disputes with Skechers, or that Plaintiff does not have standing to assert any contractual claims against Skechers.

77. Plaintiff and Class Members conferred a benefit on Skechers, and Skechers had knowledge of this benefit. By its wrongful acts and omissions described herein, including selling the defective Lighted Shoes, Skechers was unjustly enriched at the expense of Plaintiff and Class Members.

78. Plaintiff's and Class Members' detriment and Skechers' enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

784233.1

79. It would be inequitable for Skechers to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Lighted Shoes.

80. Plaintiff and Class Members seek restitution from Skechers and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Skechers from its wrongful conduct, and establishing a constructive trust from which Plaintiff and Class Members may seek restitution.

<u>**COUNT III**</u>
<u>**Negligence**</u>
<u>**(Plaintiff Guajardo individually and on behalf of the Illinois Class)**</u>

81. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

82. Skechers owed a duty to Plaintiff and Class Members to design, manufacture, produce, test, inspect, market, distribute, and sell the Lighted Shoes with reasonable care and in a workmanlike fashion, and also had a duty to protect Plaintiff and Class Members from foreseeable and unreasonable risks of harm. Skechers breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting, and selling the Lighted Shoes.

83. Skechers also acted unreasonably in failing to provide appropriate and adequate warning or instruction, and the failure to provide adequate warnings and instructions was a proximate cause of the harm for which damages are sought.

84. In addition, at the time the Lighted Shoes left Skechers' control without an adequate warning or instruction, they constituted unreasonably dangerous articles that Skechers knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable consumer. Skechers knew or should have known that the Lighted Shoes it designed,

manufactured, produced, tested, inspected, marketed, distributed, and/or sold would, during ordinary and foreseeable use, create an unreasonable safety risk and fail to perform as intended.

85. At the time of the design or manufacture of the Lighted Shoes, Skechers acted unreasonably in designing or manufacturing them, and this conduct proximately caused the harm for which damages are sought.

86. Furthermore, at the time the Lighted Shoes left the control of Skechers, it unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design that could have been adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the Lighted Shoes. At the time the Lighted Shoes left the control of Skechers, their design was so unreasonable that no reasonable person, aware of the relevant facts, would use or purchase them.

87. Skechers knew or should have known that the Lighted Shoes created an unreasonable safety risk as a result of the Defect, and that the Defect could cause personal injury and/or property damage.

88. Based on its knowledge, Skechers had a duty to disclose to Plaintiff and Class Members the serious safety risks posed by the Lighted Shoes, in addition to a duty to disclose the nature of the Defect.

89. Skechers had a further duty not to put the defective products on the market, had a continuing duty to remove its unsafe Lighted Shoes from the market, and also had a duty to seek a recall from consumers.

90. Skechers failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of the Lighted Shoes by, among

784233.1

other things, failing to design and manufacture the Lighted Shoes in a manner to ensure that, under normal and intended usage, a serious safety risk such as the one posed by the Defect did not occur.

91. Skechers failed to exercise reasonable care in failing to warn or to warn adequately and sufficiently, either directly or indirectly, of the Defect.

92. Skechers failed to exercise reasonable care when it knew of the safety risks the Defect posed and actively concealed those risks from Plaintiff and Class Members.

93. Skechers failed to exercise reasonable care when it knew of the safety risks posed by the Defect and failed to replace, repair, or recall Lighted Shoes it knew or should have known were unsafe and defective.  As a direct and proximate result of Skechers' negligence, Plaintiff and the Class Members bought the Lighted Shoes without knowledge of the Defect or of the serious safety risk, and purchased an unsafe product that could not be used for its intended purpose.

94. As a direct and proximate result of Skechers' negligence, Plaintiff and the Class Members have suffered damages.

**COUNT IV**
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 ILCS 505/1, et seq. and 720 ILCS 295/1a)**
**(Plaintiff Guajard individually and on behalf of the Illinois Class)**

95. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

96. Plaintiff Guajardo brings this action on behalf of herself and the Illinois Class against Skechers.

97. Defendants are "person[s]" as that term is defined in 815 ILCS 505/1 (c).

98. Plaintiff and the Illinois Class are "consumers" as that term is defined in 815 ILCS 505/l(e).

99. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment

784233.1

of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of trade or commerce ... whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

100.     In the course of their business, including at the point of sale while attempting to persuade potential customers to purchase Skechers Lighted Shoes, Skechers concealed, suppressed, and intentionally omitted material facts concerning the Lighted Shoes. Plaintiff and Illinois Class members had no way of discerning that Skechers' representations were false and misleading. Plaintiff and Illinois Class members did not and could not unravel Skechers' deception on their own.

101.     Skechers thus violated the Act by, at minimum willfully failing to disclose and actively concealing the manufacturing defect in the Lighted Shoes.

102.     Skechers engaged in misleading, false, unfair or deceptive acts or practices that violated the Illinois CFA by failing to disclose and actively concealing the manufacturing defect their Lighted Shoes.

103.     Skechers intentionally and knowingly misrepresented material facts regarding the Lighted Shoes with intent to mislead Plaintiff and the Illinois Class.

104.     Skechers knew or should have known that its conduct violated the Illinois CFA. Skechers owed Plaintiff and the Illinois Class a duty to disclose the illegality and public health and safety risks of the Lighted Shoes because they:

    a.     possessed exclusive knowledge that they were manufacturing, selling, and distributing Lighted Shoes with a manufacturing defect throughout the United States;

784233.1

    b.      intentionally concealed the foregoing from regulators, Plaintiff, Illinois Class members; and/or

    c.      made incomplete representations about the manufacturing defects in the Light Up Shoes while purposefully withholding material facts from Plaintiff and Illinois Class members that contradicted these representations.

105.     Skechers concealed the manufacturing defects in their Lighted Shoes resulting in a raft of negative publicity once the defects finally began to be disclosed. The value of the Lighted Shoes has greatly diminished. In light of the stigma attached to those Lighted Shoes by Skechers' conduct, they are now worth significantly less than they otherwise would be worth.

106.     Skechers' fraudulent concealment of the true characteristics of their Lighted Shoes was material to Plaintiff and the Illinois Class.

107.     Skechers' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiff, about the true quality of the Skechers brand, the devaluing of integrity at Skechers, and the true value of the Lighted Shoes.

108.     Plaintiff and the Illinois Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Illinois Class members who purchased or leased the Lighted Shoes would not have purchased or leased them at all and/or-if the Lighted Shoes' true nature had been disclosed and mitigated, and would have paid significantly less for them. Plaintiff and Class members also suffered diminished value of their Lighted Shoes, as well as lost or diminished use.

109.     Skechers had an ongoing duty to all of their customers to refrain from unfair and deceptive practices under the Illinois CFA. All owners of Lighted Shoes suffered ascertainable

784233.1

loss in the form of the diminished value of their Lighted Shoes as a result of Skechers' deceptive and unfair acts and practices made in the course of Skechers' business.

110.     Skechers' violations present a continuing risk to Plaintiff as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

111.     As a direct and proximate result of Defendants' violations of the Illinois CFA, Plaintiff and the Illinois Class have suffered injury-in-fact and/or actual damage.

112.     Pursuant to 815 I LCS 505/10a(a), Plaintiff and the Illinois Class seek monetary relief against Skechers in the amount of actual damages, as well as punitive damages because Skechers acted with fraud and/or malice and/or was grossly negligent.

113.     Plaintiff also seeks an order enjoining Skechers' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 50511 et seq.

### COUNT V
### Violation of Illinois Express Warranty Statute
### (810 ILCS 5/2-313)
### (Plaintiff Guajardo individually and on behalf of the Illinois Class)

114.     Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

115.     In connection with its sale of Lighted Shoes, Skechers expressly warranted that the Lighted Shoes were free from defects and suitable for their intended use.

116.     Plaintiff Guajardo, and each member of the Illinois Class, formed a contract with Defendant at the time Plaintiff and the other members of the Illinois Class purchased the Lighted Shoes.  The terms of the contract include the promises and affirmations of fact made by Defendant on the Lighted Shoes' packaging and through marketing and advertising, as described above.  This labeling, marketing and advertising constitute express warranties and became part of the basis of

the bargain, and are part of the standardized contract between Plaintiff and the members of the Illinois Class and Defendant.

117.    Plaintiff Guajardo and the Class Members have privity of contract with Skechers through their purchase of the Lighted Shoes, and through the warranties that Skechers issued to its customers. Skecher's warranties accompanied the Lighted Shoes and were intended to benefit consumers of the Lighted Shores. To the extent Class Members purchased the Lighted Shores from third-party retailers or received Lighted Shoes as a gift of a purchaser, privity is not required because the Class Members are intended third-party beneficiaries of the contracts between Skechers, third-party retailers, and purchasers.

118.    The express warranties covering the Lighted Shores were a material part of the bargain between Skechers and consumers. At the time it made these express warranties, Skechers knew of the purpose for which the Lighted Shoes were to be used.

119.    Skechers breached its express warranties by selling Lighted Shores that were, in actuality, not free of defects, not suitable for their intended used, not made from merchantable material, and were not safe as children's' footwear. Skechers breached its express written warranties to Plaintiff and Class Members in that the Lighted Shoes contain the Defect on the very first day of purchase, creating a serious safety risk to Plaintiff and Class Members.

120.    The Lighted Shoes that Plaintiff and Class Members purchased were subject to the Defect and caused each of them damages including loss of the product, loss of the benefit of their bargain, and personal injuries.

121.    Skechers breached its express warranty by failing to replace the defective Lighted Shoes despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing the Lighted Shoes.

784233.1

122.     To the extent that Skechers offered to replace the defective products, the warranty of replacement fails in its essential purpose because it is insufficient to make Plaintiff and Class Members whole.  Skechers' 45-day return policy does not apply to all defective Lighted Shoes – it only applies to that already manifested the latent Defect and then only if the Defect manifests within 45 days of purchase.  The warranty of replacement of defective Lighted Shoes is insufficient to adequately cover all Lighted Shoes and fails in its essential purpose, making consumers whole.

123.     Many of the damages resulting from the defective Lighted Shoes cannot be resolved through the limited remedy of replacement, as incidental and consequential damages have already been suffered due to Skechers conduct as alleged herein.

124.     Accordingly, recovery by Plaintiff and Class Members is not limited to the limited warranty of replacement, and they seek all remedies allowed by law.

125.     Upon information and belief, Skechers received further notice and has been on notice of the Defect and of its breaches of warranties through customer claims reporting the problems with the Lighted Shoes, customer complaints from various sources, numerous lawsuits filed against it over failures of the Lighted Shoes, and its own internal and external testing.

126.     Despite having notice and knowledge of the Defect, Skechers failed to provide Defect-free Lighted Shoes to Plaintiff and Class Members and failed to provide any form of compensation for the damages resulting from the Defect.

127.     As a direct and proximate cause of Skechers' breach of its express warranties, Plaintiff and Class Members did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment for the Lighted Shoes with the Defect.

## COUNT VI
## Violation of Illinois Implied Warranty Statute
## (810 ILCS 5/2-314)
## (Plaintiff Guajardo individually and on behalf of the Illinois Class)

128.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

129.    The Lighted Shoes purchased by Plaintiff Guajardo and Class Members was defectively designed and manufactured and posed a serious and immediate safety risk to consumers and the public.

130.    All of the Lighted Shoes sold by Skechers left Skechers' facilities and control with a Defect caused by a defective design incorporated into the manufacture of the Lighted Shoes.

131.    The Defect placed and/or places Plaintiff and Class Members at risk of injury and/or property damage through the use of the Lighted Shoes.

132.    The law imposes a duty requiring manufacturers or sellers of a product to ensure that the product is merchantable and reasonably fit for the ordinary purposes for which such a product is used, and that the product is acceptable in trad for the product description.  This implied warranty of merchantability is part of the basis of the bargain between Skechers and consumers, including Plaintiff and the Class Members.

133.    Notwithstanding the aforementioned duty, at the time of deliver, Skechers breached the implied warranty of merchantability in that the Lighted Shoes are defective and poses a serious safety risk, was not fit for the ordinary purposes for which they were used, would not pass without objection, and failed to conform to the standard performance of like products.

134.    Skechers knew, or should have known, that the Lighted Shoes posed a safety risk and was defective, and that it breached the implied warranties at the time it sold the Lighted Shoes to Plaintiff and Class Members or otherwise placed them into the stream of commerce.

784233.1

135.     Plaintiff Guajardo and the Class Members have privity of contract with Skechers through their purchase of the Lighted Shoes, and through the express written and implied warranties that Skechers issued to its customers.  Skechers warranties accompanied the Lighted Shoes and were intended to benefit consumers.  To the extent Class Members purchased the Lighted Shoes from third-party retailers, privity is not required because Class Members are intended third-party beneficiaries of the contracts between Skechers and third-party retailers.

136.     As a direct and proximate result of Skechers' breach of the implied warranties, Plaintiff and Class Members bought Skechers without knowledge of the Defect or the serious safety risks.

137.     As a direct and proximate result of Skechers' breach of the implied warranties, Plaintiff and Class Members purchased unsafe Lighted Shoes for their children that were not fit to be used for their intended purpose as children's' footwear.

138.     Upon information and belief, Skechers received notice and has been on notice of the Defect and of its breaches of warranties through customer claims reporting problems with the Lighted Shoes, consumer complaints at various sources, numerous lawsuits filed against it over failures of the Lighted Shoes, and its own internal and external testing.

139.     Despite having notice and knowledge of the Defect, Skechers failed to provide Defect-free Lighted Shoes to Plaintiff and Class Members and failed to provide any form of compensation for the damages resulting from the Defect.

140.     As a direct and proximate result of Skechers' breach of the implied warranties, Plaintiff and Class Members have suffered damages.

## COUNT VII
### Violation of Illinois's Uniform Deceptive Trade Practices Act (UDTPA)
### (815 ILCS 510/1, et seq.)
### (Plaintiff Guajardo individually and on behalf of the Illinois Class)

141.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

142.    At all times material, Illinois's Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1, *et seq.*, was in full force and effect.

143.    The Illinois UDTPA provides in pertinent part that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: ". . . (5) represents that goods or services have . . . uses, benefits, or qualities that they do not have . . .; (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; . . . [or] (12 engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 Ill. Comp. Stat. 510/2.

144.    Defendant is a "person" within the meaning of 815 Ill. Comp. Stat. 510/1(5).

145.    Defendant's actions, as alleged herein, constitute deceptive, unfair, fraudulent, and unlawful practices committed in violation of the Illinois UDTPA.

146.    All of the conduct misrepresentations alleged herein occurred in the course of Defendant's business and was part of a pattern or generalized course of conduct.

147.    As described more fully above, Defendant knew of the Defect and that the Lighted Shores posed a serious safety risk to Plaintiff and Illinois Class Members.  Defendant concealed that knowledge and misrepresented to consumers and the public that its Lighted Shoes were durable and safe for normal use.

784233.1

148.     Despite its knowledge of the serious safety risk the Lighted Shoes posed to consumers, Defendant failed to issue a warning or to recall and/or replace the Lighted Shoes and instead concealed the Defect and the safety issues with the Lighted Shoes for years, which continues to this day.

149.     As an entity with exclusive knowledge regarding the safety risk and Defect in the Lighted Shoes, Defendant had a duty to disclose the existence of any defect, particularly given the fact that the Lighted Shoes posed a serious safety risk to Plaintiff and Class Members.

150.     Plaintiff and Illinois Class members reasonably expected that Skechers would disclose the existence of the Defect and the serious safety risk the Lighted Shoes posed to consumers and the public, information which is and was material to Plaintiff and Illinois Class Members.  Plaintiff and Illinois Class Members also reasonably expected that Skechers would not sell a product that was unsafe to use.

151.     Skechers, at all times material, knew or should have known that Plaintiff and Illinois Class Members did not know of, nor could reasonably have been expected to discover the safety risk posed by the Lighted Shoes and that Skechers was in exclusive possession of the knowledge of the Defect.

152.     By concealing the serious safety risk posed by the Lighted Shoes and the existence of the Defect and representing that the Lighted Shoes were safe for their intended use as children's everyday footwear, Skechers engaged in actionable conduct within the meaning of the Illinois UDTPA.

153.     Had Plaintiff and Illinois Class Members known of the serious safety risk and/or the Defect in the Lighted Shoes, they would not have purchased the Lighted Shoes, or else would have paid substantially less for them.

154.     Skechers' deceptive, unfair, fraudulent, and unlawful conduct alleged herein was specifically designed to and did induce Plaintiff and Illinois Class Members to purchase the Lighted Shoes.

155.     Plaintiff and Illinois Class Members suffered injury and/or damage to real or personal property as a result of their purchases and thus Plaintiff Guajardo has standing to represent the Illinois Class in this action.

156.     As a direct and proximate result of Skechers' violation of the Illinois UDTPA alleged herein, Plaintiff and the Illinois Class Members were damaged.  Plaintiff and Illinois Class Members seek injunctive relief, pursuant to 815 Ill. Comp. Stat. 510/3, against Skechers based upon the market share that Skechers claims to have for Lighted Shoes and the extremely high likelihood that Plaintiff and Illinois Class members may personally suffer future damages from the failure of Skechers' Lighted Shoes.

## JURY DEMAND

Plaintiff respectfully request a trial by jury on all causes of action so triable.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all others similarly situated, requests the Court enter judgment against Skechers, and accordingly requests the following:

A.  An Order certifying this action as a class action;

B.  An Order appointing Plaintiff as the Class representative, and appointing the undersigned counsel as Class Counsel;

C.  A Declaration of the defect and that the warranty fails its essential purpose;

784233.1

D.  An Order awarding injunctive relief by requiring Skechers, at its own expense, to issue corrective actions, including notification, recall, inspection, and, as necessary, repair and replacement of the Lighted Shoes;

E.  Payment to Plaintiffs and all Class Members of all damages associated with or caused by the defective Lighted Shoes, in an amount to be proven at trial;

F.  An award of attorneys' fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class;

G.  Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and,

H.  Such other and further relief as this Court may deem just, equitable, or proper.


Date:  May 16, 2019

LITE DEPALMA GREENBERG, LLC

*/s/ Kyle A. Shamberg*
Katrina Carroll*
kcarroll@litedepalma.com
Kyle A. Shamberg
kshamberg@litedepalma.com
**LITE DEPALMA GREENBERG, LLC**
111 West Washington Street, Suite 1240
Chicago, Illinois 60602
Telephone: (312) 750-1265

Gregory F. Coleman*
greg@gregcolemanlaw.com
Adam A. Edwards*
adam@gregcolemanlaw.com
GREG COLEMAN LAW, PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile:  (865) 522-0049

784233.1

*Pro Hac Vice Applications to be submitted*

*Attorneys for Plaintiffs and the Putative Class*

784233.1