E-FILED
Monday, 30 November, 2020  05:42:55 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

| | | |
|---|---|---|
| RIKKI GUAJARDO, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:19-cv-04104-SLD-JEH |
| SKECHERS USA, INC., | ) ) | |
| Defendant. | ) | |

### ORDER

Before the Court are Defendant Skechers USA, Inc.'s ("Skechers") Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"), ECF No. 13, and Motion for Leave to File a Reply in Support of its Motion to Dismiss, ECF No. 19.  For the reasons that follow, the motions are GRANTED.

### BACKGROUND[1]

In January 2018, Plaintiff Rikki Guajardo purchased a pair of Skechers Energy Lights ("Energy Lights" or "shoes")—children's footwear with light-up features—for her son at a Kohl's retailer in Illinois.  The Skechers-designed shoebox included information about the available light colors and how to switch between them, the existence of an on/off switch, the duration of the light, and the existence of an enclosed USB cable but provided no safety warnings about the product.  FAC ¶ 20, ECF No. 11.  The shoe's interior label included a CE marking, which indicated the "[s]hoes [we]re in conformity with the health, safety, and

---

[1] When ruling on a motion to dismiss, a court must take all of the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff.  *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012).  Unless otherwise noted, the facts set forth herein are drawn from the First Amended Complaint, ECF No. 11.

environmental protection standards for products sold within the European Economic Area." *Id.* ¶ 56. The shoes may have been sold with an attached hangtag that said, "Do not overcharge or leave plugged in overnight" but did not include any other safety warning. *Id.* ¶ 57.

Guajardo's son wore the Energy Lights several times. On one occasion, the heat radiating from the back of the shoes was so painful and uncomfortable that Guajardo's son had to remove the shoes. A different time, the shoes "became so hot that they caused a painful heat blister on the back of his foot." *Id.* ¶ 60. Guajardo alleges the shoes contain a design or manufacturing defect—"an inadequate electrical system powered by batteries, which can lead to multiple failure modes, including a dangerous electrical or thermal event that can lead to heat, fire or the release of electrolyte vapors that can cause skin burns." *Id.* ¶ 6. Guajardo contacted Skechers' customer service. She was instructed to return the shoes to Kohl's, but Kohl's would not accept them because they had been worn.

The parties are diverse—Guajardo resides in Spring Valley, Illinois, and is an Illinois citizen, and Skechers is a Delaware corporation with a principal place of business in California. Guajardo alleges class damages exceeding $5,000,000.00 in the aggregate. Therefore, the Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d)(2) (extending federal subject-matter jurisdiction to proposed class actions with damages exceeding five million dollars when at least one member of the class is diverse from the defendant).[2] Guajardo brings suit alleging breach of contract and common law warranty, FAC ¶¶ 76–83;

---

[2] Plaintiff includes class allegations, but the Court need not certify a class before asserting jurisdiction over a class action. *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (7th Cir. 2010) ("[F]ederal jurisdiction under the [CAFA] does not depend on certification."); *see* 28 U.S.C. § 1332(d)(8) ("This subsection shall apply to any class action before or after the entry of a class certification order by the court."). Nevertheless, Plaintiff alleges that her claims and the other class members' claims exceed $5,000,000, FAC ¶ 15, and Skechers has not challenged that allegation. Therefore, the Court concludes for purposes of Skechers' Motion to Dismiss that jurisdiction has been properly alleged. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 542–43 (7th Cir. 2006) (finding that the court must accept the plaintiff's allegations on which jurisdiction is based at the pleading stage unless they are contested by the defendant).

unjust enrichment, *id.* ¶¶ 84–89; negligence, *id.* ¶¶ 90–103; violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1–505/12, FAC ¶¶ 104–122; breach of the express warranty, 810 ILCS 5/2-313, FAC ¶¶ 123–136; breach of the implied warranty, 810 ILCS 5/2-314, FAC ¶¶ 137–149; and violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/1–7, FAC ¶¶ 150–165.  Skechers moves to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Mem. Supp. Mot. Dismiss 4–15, ECF No. 14.

## DISCUSSION

### I.     Motion for Leave to File a Reply

Skechers has moved for leave to file a Reply in Support of its Motion to Dismiss, arguing that a reply is needed because "[Guajardo's] opposition mischaracterizes the law and positions taken by [Skechers]."  Mot. Leave File Reply 1, ECF No. 19.  Guajardo has not filed any opposition to this motion.  For all motions other than summary judgment, "[n]o reply to the response is permitted without leave of Court."  CDIL-LR 7.1(B)(3).  "Typically, reply briefs are permitted if the party opposing a motion has introduced new and unexpected issues in his response to the motion, and the [c]ourt finds that a reply from the moving party would be helpful to its disposition of the motion."  *Shefts v. Petrakis*, No. 10-cv-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011).  A court may also permit a reply "in the interest of completeness." *Zhan v. Hogan*, No. 4:18-cv-04126-SLD-JEH, 2018 WL 9877970, at *2 (C.D. Ill. Dec. 18, 2018).  Because the proposed Reply would be helpful to the Court and in the interest of completeness, Skechers' Motion for Leave to File a Reply is GRANTED.

### II.    Motion to Dismiss

#### a.   Legal Standard

In reviewing a motion to dismiss, a court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012).  A court will dismiss a complaint if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In determining whether such a claim has been stated, a court should consider the complaint's well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The allegations must "raise a right to relief above the speculative level."  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quotation marks omitted).

   **b.   Analysis[3]**

   **i.   Count VI: Breach of Implied Warranty of Merchantability (810 ILCS 5/2-314)**

Skechers argues that Guajardo's breach of implied warranty claim fails because Guajardo purchased the shoes from Kohl's, not Skechers.  Without privity of contract between the parties, Guajardo cannot recover economic damages.  Mem. Supp. Mot. Dismiss 7–9 (citing *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003)).[4]  Guajardo argues that privity is

---

[3] Skechers argues Guajardo's breach of contract claim fails because Guajardo purchased the shoes from Kohl's and the parties have no contractual relationship and that the common law warranty claim should be dismissed because Illinois only recognizes the cause of action if it involves construction work or claims between landlords and tenants. Mem. Supp. Mot. Dismiss 4–5.  Skechers also moves to dismiss the breach of express warranty claim because Guajardo has not alleged a specific warranty against the claimed defect.  *Id.* at 5–7.  Guajardo has not responded to any of these arguments; therefore, she has abandoned Counts I and V and they are dismissed with prejudice.  *See Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003) (deeming the plaintiff's negligence claim abandoned because he failed to delineate it in his district court brief opposing summary judgment).

[4] Skechers argues that it is irrelevant for purposes of the implied warranty analysis that Guajardo's son was injured because she seeks only economic damages, not damages for his personal injuries.  Mem. Supp. Mot. Dismiss 9 (quoting FAC ¶ 146 ("As a direct and proximate result of Skechers' breach of the implied warranties, [Guajardo] and Class Members purchased unsafe Lighted Shoes for their children that were *not fit to be used for their intended purpose* as children's[] footwear." (emphasis added)); *see Szajna v. Gen. Motors Corp.*, 503 N.E.2d 760, 763 (Ill. 1986) (citing *Berry v. G.D. Searle & Co.*, 309 N.E.2d 550, 556 (Ill. 1974) (holding that privity was unnecessary when plaintiff alleged personal injuries resulting from a breach of an implied warranty of fitness for a particular purpose); *see also Jensen v. Bayer AG*, 862 N.E.2d 1091, 1099–100 (Ill. App. Ct. 2007) (affirming the trial court's dismissal of implied warranty claim for lack of privity because the plaintiff alleged only that the "[d]efendant[ ]

4

not required when a buyer relies on a manufacturer's "direct dealings,"—i.e., product labeling and marketing materials. Mem. Opp'n Mot. Dismiss 3, ECF No. 18[5] (citing *Sheeley v. Wilson Sporting Goods Co*., No. 17-cv-3076, 2017 WL 5517352 (N.D. Ill. Nov. 17, 2017), *Elward v. Electrolux Home Prod., Inc*., 214 F. Supp. 3d 701, 706 (N.D. Ill. 2016), and *In Re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 806–07 (N.D. Ill. 2016)).

"[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314. In Illinois, "privity of contract is a prerequisite to recover economic damages for breach of implied warranty." *Voelker*, 353 F.3d at 525 (citing *Rothe v. Maloney Cadillac, Inc*., 518 N.E.2d 1028, 1029–30 (Ill. 1988)). In *Rothe*, the Illinois Supreme Court relied on its earlier decision in *Szajna v. General Motors Corp.*, 503 N.E.2d 760 (Ill. 1986) to conclude that the plaintiff, who had purchased a car from an independent dealer, had no buyer-seller relationship and therefore no cause of action for implied warranty of merchantability against the manufacturer. *Rothe*, 518 N.E.2d at 1029–30. "[W]ith respect to purely economic loss, the UCC article II implied warranties give a buyer of goods a potential cause of action only against his immediate seller." *Rothe*, 518 N.E.2d at 1029; *cf. Sienna Court Condo. Ass'n v. Champion Aluminum Corp.*, 129 N.E.3d 1112, 1121 (Ill. 2018) ("The purchaser of a newly constructed home may not pursue a

---

breached this warranty of merchantability by selling [a drug] [not] fit for its ordinary purpose" and did not seek compensation for his personal injury). Guajardo does not dispute Skechers' interpretation of the claim or otherwise argue that she is suing for personal injuries.
[5] Plaintiff alleges in her FAC that privity is not required because she and the other class members are intended third party beneficiaries of the contracts between Skechers and third-party retailers. FAC ¶ 144. Skechers argues this exception is not viable because Plaintiff did not allege that Skechers knew of her individual identity at the time she purchased the shoes from Kohl's. Mem. Supp. Mot. Dismiss 8 (citing *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 348 F. Supp. 3d 797, 814–15 (N.D. Ill. 2018) (dismissing implied warranty claim)). Plaintiff does not defend against Skechers' argument, so the Court deems this theory abandoned. *See Palmer*, 327 F.3d at 597–98.

claim for breach of an implied warranty of habitability against a subcontractor where there is no contractual relationship.").

Guajardo argues she does not need to establish privity because Skechers aggressively marketed directly to consumers using print and TV campaigns.  Resolving this argument requires delving into the Illinois cases cited in Guajardo's direct dealing cases.  In *In Re Rust-Oleum*, the court concluded that the plaintiffs' allegations of "direct dealings" with Rust-Oleum "through its agents, dealers, and/or representatives" as well as "direct marketing campaign to consumers" were sufficient to defeat the manufacturer's motion to dismiss based on lack of privity.  155 F. Supp. 3d at 806–07 (citing *TRW, Inc. v. Dart Indus., Inc.*, No. 84 C 3049, 1986 WL 3327, at *9 (N.D. Ill. Mar. 7, 1986)).  *TRW* itself did not explain the privity exception but instead cited to *Abco Metals Corp. v. J.W. Imports Co.*, 560 F. Supp. 125, 128 (N.D. Ill. 1982).

In *Abco*, 560 F. Supp. at 127, the plaintiff met with the manufacturer's engineer and the manufacturer's distributor to discuss purchasing a wire chopper made to certain specifications. The manufacturer agreed to build the chopper and guaranteed that it would meet the plaintiff's requirements.  *Id*.  The plaintiff directly contacted the manufacturer to discuss problems with the chopper's performance and then sued for breach of implied warranty.  The court concluded that privity was not required when "a direct relationship [existed] between the manufacturer and the seller, or where . . . the manufacturer knew the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements."  *Id*. at 128 (quoting *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 412 (Ill. App. Ct. 1980) (citation omitted)).

In *Elward v. Electrolux Home Products, Inc.*, the plaintiff, on behalf of a putative class of consumers, alleged Electrolux dishwashers overheated and caused fires and flooding.  She

sued for breach of implied warranty, which the defendant moved to dismiss based on lack of privity. The court concluded the plaintiff's contacts with Electrolux "via advertisements, the internet, warranty forms, registration cards, and other documents," 214 F. Supp. 3d at 702–03, adequately supported "the direct relationship exception to the privity requirement," *id*. at 705.

In Guajardo's last case, *Sheeley v. Wilson Sporting Goods Co*., the plaintiff purchased a bat manufactured by the defendant that did not meet the requirements for use in a game subject to United States Specialty Sports Association (USSSA) regulations, despite labels suggesting compliance. 2017 WL 5517352, *1. The plaintiff sued for breach of implied warranty, and the defendant moved to dismiss for lack of privity. The court, relying on *Rust-Oleum* and *Elward*, concluded that a bat label was sufficient to allege a "direct marketing exception." *Id*. at *1, *3.

Skechers disputes that the direct dealing exception exists post *Szajna* and *Rothe* or that it should be applied here because Guajardo has not alleged reliance on any affirmative misrepresentations, the common thread of her cases. Reply 3–4, ECF No. 19-1. The Court agrees. Even if a direct relationship privity exception survived *Szajna* and *Rothe*, the recent line of federal cases exceeds the bounds of the exception created by the Illinois courts. In *Abco*, the only Illinois direct relationship case supporting Guajardo's federal cases, the buyer had *repeated contacts with the manufacturer*. That is not the case here. Guajardo states only that Skechers marketed its footwear directly to consumers and that if she had been aware of the defect, she would not have purchased the shoes. Mem. Opp'n Mot. Dismiss 3. Plaintiff has not alleged she relied on any particular statement. For these reasons, her allegations are insufficient to satisfy the direct relationship privity exception. Accordingly, Guajardo's implied warranty of merchantability claim is dismissed. *See In re VTech Data Breach Litigation*, No. 15 CV 10889, 2018 WL 1863953, at *5 (N.D. Ill. Apr. 18, 2018) (acknowledging that Illinois has recognized

the direct relationship privity exception, *Frank's Maint.*, 408 N.E.2d at 412, and that "recent federal cases . . . have interpreted [it] as applying to circumstances in which manufacturers advertise[d] directly to consumers" but concluding that it was not clear that "the Illinois Supreme Court would . . . [agree] (and no such binding authority [was] cited), especially where, as here, there [wa]s no allegation that a plaintiff viewed a particular representation in an ad and relied on the representation in making the purchase").

### ii.     Count IV: Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2)

Guajardo next alleges that Skechers concealed, suppressed, and intentionally omitted material facts about the shoes while attempting to persuade potential customers to purchase them in violation of the ICFA.  FAC ¶ 109.  Skechers argues that because an ICFA claim sounds in fraud, it must meet Rule 9(b)'s heightened pleading requirements and that Guajardo "fails to plead (1) with particularity any statements or omissions related to the alleged defect; and (2) any facts giving rise to an inference that Skechers knew of the alleged defect at the time of sale." Mem. Supp. Mot. Dismiss 9.  Guajardo contends Skechers knew or should have known about its dangerous products "yet failed to provide any warning to consumers."  Mem. Opp'n Mot. Dismiss 4.

The ICFA prohibits "unfair or deceptive acts or practices, including . . . deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment . . . in the conduct of any trade or commerce."  815 ILCS 505/2.  Such a claim requires "(1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive act."  *Phila. Indem. Ins. Co. v.*

*Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (citing *De Bouse v. Bayer AG*, 922 N.E.2d 309, 313 (Ill. 2009)).  "If the claim rests on allegations of deceptive conduct, then Rule 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud. Specifically, the complaint must identify the "who, what, when, where, and how" of the alleged fraud." *Vanzant v. Hill's Pet Nutrition, Inc*., 934 F.3d 730, 738 (7th Cir. 2019) (citation omitted).[6]  "[T]he plaintiff must actually be deceived by a statement or omission.  If there has been no communication with the plaintiff, there have been no statements and no omissions." *De Bouse*, 922 N.E.2d at 316 (rejecting the plaintiff's argument that she did not have to receive any communication to sue the manufacturer of a cholesterol-lowering drug for concealing information about negative side effects in violation of the ICFA).  In other words, a plaintiff must allege an omission from a communication, not a general failure to disclose.

Guajardo alleges Skechers failed to disclose information about the manufacturing defect in its "advertising, on [its] shoeboxes and hangtags, and on their product," FAC ¶¶ 20, 21, 37–38, 54–59, 113(c), which only provided succinct information about the shoes' light-up features and charging instructions, *id*. at ¶¶ 20, 56–57.  Mem. Opp'n Mot. Dismiss 7.  Guajardo has not alleged any direct statements that contain material omissions.  Rather, Guajardo alleges opportunities or locations where Skechers could have disclosed the alleged defect.

In *O'Connor v. Ford Motor Company*, No. 19-CV-5045, 2020 WL 4569699, at *8 (N.D. Ill. Aug. 7, 2020), the plaintiff filed an ICFA material omission claim based on the defendant's sale of trucks with defective transmissions.  The complaint alleged that the defendant knew of

---

[6] Plaintiff argues Rule 9(b) does not apply when the facts are within a defendant's control.  Mem. Opp'n Mot. Dismiss 4–5 (citing *Chisholm v. Foothill Capital Corp.*, 940 F. Supp. 1273 (N.D. Ill. 1996)).  *Chisholm* did not involve an ICFA claim and is inapplicable.  Plaintiff also argues that the particularity requirement must be relaxed when the plaintiff lacks access to all the facts necessary to detail his claim.  Mem. Opp'n Mot. Dismiss 6 (citing *PharMerica Chi., Inc. v. Meisels*, 772 F. Supp. 2d 938, 956 (N.D. Ill. 2011)).  Because the Court dismisses Plaintiff's ICFA claim for failing to allege statements with material omissions, *PharMerica* is not relevant.

the defect and continued to sell the trucks without alerting buyers.  *Id*.  The court found that the plaintiff's allegations, which were focused on knowledge and a failure to act instead of direct statements, were insufficient to allege a material omission actionable under the ICFA.  *Id*. (citing *De Bouse*, 922 N.E.2d at 316); *see also De Bouse* ("[W]e have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission.  If there has been no communication with the plaintiff, there have been no statements and no omissions."); *cf. Mihalich v. Johnson*, No. 14-CV-600-DRH-SCW, 2015 WL 9455559, at *5 (S.D. Ill. Dec. 28, 2015) (dismissing the plaintiff's ICFA claim because she failed to allege a specific statement that demonstrated the defendant's omission or misrepresentation); *Armstrong v. Deere & Co.*, No. 1:16-cv-00844-TWP-MPB, 2017 WL 4168485, at *4–6 (S.D. Ind. Sept. 20, 2017) (holding that the plaintiff's allegations that the defendant "knew or should have known that its planters" were defective but "failed to disclose the existence of this material information" insufficient to allege with particularity an omission prohibited by the ICFA).  *Contra Zak v. Bose Corp.*, No. 17-CV-02928, 2019 WL 1437909, at *1, *6 (N.D. Ill. Mar. 31, 2019) (concluding that brief statements were sufficient to state ICFA claim when manufacturer encouraged purchaser of headphones to download a free app to enhance the headphones' functionality without revealing that the app collected and transmitted data with personal identifiers "to a third-party data miner without consumers' knowledge or consent").

Guajardo's allegation that Skechers failed to disclose the defect is insufficient to state an ICFA claim because she has not pointed to a direct statement with a material omission.  The Court need not reach the second half of Skechers' argument—that Guajardo has not adequately alleged it knew of the defect when Guajardo purchased the shoes.[7]

---

[7] Guajardo argues that Skechers violated the UDTPA (Count VII) in the same way—"when it engaged in unfair, deceptive, and fraudulent conduct by omitting information regarding the existence of the [d]efect and its dangers,

### iii.    Count III: Negligence

Skechers argues Guajardo's product liability negligence claim fails because "(1) the *Moorman* doctrine precludes tort claims for economic losses arising from a product liability claim; and (2) [Guajardo] fails to plead facts establishing that Skechers knew about the alleged design defect."  Mem. Supp. Mot. Dismiss 12.  Guajardo maintains the *Moorman* doctrine does not apply because her son suffered a personal injury from the Energy Lights "due to a sudden or dangerous occurrence."  Mem. Opp'n Mot. Dismiss 12–13 (citing *In re Chicago Flood Litig*., 680 N.E.2d 265, 275 (Ill. 1997)).

To plead negligence, a plaintiff must allege duty, breach, causation, and damages. *Suarez v. W.M. Barr & Co., Inc.*, 842 F.3d 513, 523 (7th Cir. 2016) (citing *Calles v. Scripto–Tokai Corp.*, 864 N.E.2d 249, 263 (Ill. 2007)).  In *Moorman Manufacturing Co. v. National Tank Co*., 435 N.E.2d 443, 452 (Ill. 1982), the plaintiff sued under a negligence theory for damages resulting from a crack in a grain-storage tank.  The court held that the plaintiff could not pursue a negligence claim because the UCC provided the proper framework for economic losses.  *Id*. at 452.  Economic loss damages include "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property."  *Id*. at 449 (quotation marks omitted).

---

which was known by Skechers at the time of [Guajardo's] purchase (and unknown to [Guajardo]), and failed to act in a manner sufficient to eliminate the [d]efect."  Mem. Opp'n Mot. Dismiss 4.  Skechers argues that Guajardo's UDTPA claim fails for the same reasons her ICFA claim fails—"because she fails to plead (1) with particularity any statements or omissions related to the alleged defect; and (2) any facts giving rise to an inference that Skechers knew of the alleged defect at the time of sale."  Mem. Supp. Mot. Dismiss 9 (citing *Schwebe v. AGC Flat Glass N. Am., Inc.*, No. 12 C 9873, 2013 WL 2151551, at *3 (N.D. Ill. May 16, 2013)).  In *Schwebe*, the plaintiff brought ICFA and UDTPA claims against a window manufacturer.  The court dismissed both claims because the plaintiff failed to allege a communication "containing either a deceptive misrepresentation or omission," a necessary element of both claims.  *Id*. at *2–3 (citing *De Bouse*, 922 N.E.2d at 318).  Guajardo does not respond to Skechers' argument that *Schwebe* is dispositive of her claim.  Therefore, the UDTPA claim is dismissed.

In her negligence count, Guajardo seeks damages for "an unsafe product that could not be used for its intended purpose."  FAC ¶¶ 102–03.  Skechers argues suing for "a product . . . unfit for its intended use" demonstrates she is seeking economic losses due to disappointed expectations, a claim precluded by the *Moorman* doctrine.  Mem. Supp. Mot. Dismiss 13 (quoting *Moorman Mfg. Co*, 435 N.E.2d at 449).  Guajardo disputes her negligence claim is "simply about disappointed expectations," points to her allegations that her son was injured, and asserts the sudden or dangerous occurrence exception to the *Moorman* doctrine.  Mem. Opp'n Mot. Dismiss 12–13.

*Moorman* identified three exceptions to the economic loss rule including when "the plaintiff sustained damage, i.e., personal injury or property damage, resulting from a sudden or dangerous occurrence."  *In re Chicago Flood Litig*., 680 N.E.2d at 275 (citing *Moorman Mfg. Co*., 435 N.E.2d at 450).  "[T]he event, by itself, does not constitute an exception to the economic loss rule.  Rather, the exception is composed of a sudden, dangerous, or calamitous event coupled with personal injury or property damage."  *Id*.  Recovery in tort was limited to property damage; economic loss was not recoverable even if accompanied by property damage. *Id*. at 276 (holding that plaintiffs could recover in tort for lost inventory because it was property damage caused by the Chicago flood but could not recover the loss of continuous electrical service because that was a disappointed commercial expectation that fell within the economic loss doctrine).

Although Guajardo alleges in the FAC that she sues for the difference between the shoes she expected to buy and the defective shoes, FAC ¶ 102, she argues in response to the motion to dismiss that she has properly alleged an exception to the economic loss rule, which means she is attempting to allege a product liability negligence claim for personal injuries.  Mem. Opp'n Mot.

Dismiss 13.  The Court may "consider both [the] complaint and the additional allegations, consistent with the complaint, that [a plaintiff raises] in response to [a] motion to dismiss." *Denwiddie v. Mueller*, 775 F. App'x 817, 819–20 (7th Cir. 2019).  But a plaintiff may not amend her complaint in response to a motion to dismiss.  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co*., 631 F.3d 436, 448 (7th Cir. 2011) (holding that plaintiff may not amend his theory of recovery in his response brief).  Guajardo's original negligence claim for expectation damages is barred by the *Moorman* doctrine.  The Court grants Guajardo leave to amend her complaint if she intends to pursue a negligence claim for personal injury damages related to a sudden or dangerous event.

### iv.   Count II: Unjust Enrichment[8]

Skechers argues Guajardo's unjust enrichment claim should be dismissed because it is based on the same allegations as her inadequate ICFA and UDTPA claims.  Mem. Supp. Mot. Dismiss 12 (citing *Wiegel v. Stock Craft Mfg*., Inc., 946 F. Supp. 2d 804, 817 (N.D. Ill. 2013)).  Guajardo argues the "claim is brought in the alternative 'to the extent there is any determination that any contracts between Class Members and Skechers do[es] not govern . . . the dispute[].'"  Mem. Opp'n Mot. Dismiss 11 (alterations in original) (quoting FAC ¶ 85).

To state a claim for "unjust enrichment, a plaintiff must allege that the defendant has [(a)] unjustly retained a benefit," (b) "to the plaintiff's detriment," and (c) "defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."  *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989).  "[A]

---

[8] There is some dispute about whether unjust enrichment is a standalone claim.  *Compare Benson v. Fannie May Confections Brands, Inc*., 944 F.3d 639, 648 (7th Cir. 2019) ("Under Illinois law, there is no stand-alone claim for unjust enrichment." (citing *Alliance Acceptance Co. v. Yale Ins. Agency, Inc.*, 648 N.E.2d 971, 977 (Ill. App. Ct. 1995))) *with HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989).  The Court chooses to follow the Illinois Supreme Court's decision in *HPI Health Care*.

plaintiff need not show loss or damages, [but] he must show a detriment—and, significantly, a connection between the detriment and the defendant's retention of the benefit." *Cleary v. Philip Morris Inc*., 656 F.3d 511, 518–19 (7th Cir. 2011).

Guajardo's unjust enrichment claim depends on her claims for "breach of contract, implied warranty, negligence, and violations under ICFA and UDTPA," which "demonstrate[] that Skechers retained [Guajardo's] and Class Members' money in violation of the principles of 'justice, equity, and good conscience.'" Mem. Opp'n Mot. Dismiss 12 (quoting *Cleary*, 656 F.3d at 518). "[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary*, 656 F.3d at 517. Since Guajardo's claims have been dismissed and she has not alleged an independent basis for the Court to consider, the unjust enrichment claim is dismissed.

### v.   Standing

Skechers argues Guajardo, who purchased Energy Lights shoes, cannot bring a claim on behalf of class members who purchased Skechers' other light-up shoes such as Twinkle Toes, Shopkins, and S-Lights because they are not substantially similar. Mem. Supp. Mot. Dismiss 15 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (requiring the plaintiff to have suffered an "injury in fact" as to each claim)).

Skechers cites *Muir v. NBTY, Inc*., No. 15 C 9835, 2016 WL 5234596, at *4 (N.D. Ill. Sept. 22, 2016), *Padilla v. Costco Wholesale Corp*., No. 11 C 7686, 2012 WL 2397012, at *3 (N.D. Ill. June 21, 2012), and *Gubala v. Allmax Nutrition, Inc*., No. 14 C 9299, 2015 WL 6460086, at *4 (N.D. Ill. Oct. 26, 2015), which all concluded that a named plaintiff had standing to bring claims on behalf of unnamed plaintiffs only when the defective products were

substantially similar.  These district court cases, which cite to *Payton v. County of Kane*, 308

F.3d 673, 680 (7th Cir. 2002), are not persuasive.

In *Payton*, the court first determined that the named plaintiffs had suffered an injury in

fact and had standing to sue two of the named defendants.  Then, it concluded that whether the

named plaintiffs could represent a class suing other named defendants was an issue to be decided

during class certification, which would be decided before class member standing.  "[O]nce a

class is properly certified, statutory and Article III standing requirements must be assessed with

reference to the class as a whole, not simply with reference to the individual named plaintiffs."

*Payton*, 308 F.3d at 680; *see Lewis v. Casey,* 518 U.S. 343, 395–96 (1996) (Souter, J., concurring

in part, dissenting in part, and concurring in the judgment) ("Unnamed plaintiffs need not make

any individual showing of standing in order to obtain relief, because the standing issue focuses

on whether the plaintiff is properly before the court, not whether represented parties or absent

class members are properly before the court. Whether or not the named plaintiff who meets

individual standing requirements may assert the rights of absent class members is neither a

standing issue nor an Article III case or controversy issue but depends rather on meeting the

prerequisites of Rule 23 governing class actions." (alterations and quotation marks omitted));

*Kohen v. Pac. Inv. Mgmt. Co*. LLC, 571 F.3d 672, 676 (7th Cir. 2009) ("[A]s long as one

member of a certified class has a plausible claim to have suffered damages, the requirement of

standing is satisfied.").

Skechers does not dispute Guajardo has standing to bring her claims.  Therefore, whether

she is the appropriate representative of the class must wait until class certification, that is if

Guajardo decides to file an amended complaint curing the deficiencies described in this order.

*See Friend v. FGF Brands (USA) Inc*., No. 18 CV 7644, 2019 WL 2482728, at *3 (N.D. Ill. June

12, 2019) (deferring standing analysis until class certification because Rule 23 determines whether the named plaintiff may represent a class under the standard commonality or adequacy of representation analysis (quotation marks omitted)).

## CONCLUSION

Defendant Skechers USA, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. 13, and Motion for Leave to File a Reply in Support of its Motion to Dismiss, ECF No. 19, are GRANTED.  Counts I and V are DISMISSED WITH PREJUDICE.  Counts II, III, IV, VI, and VII are DISMISSED with leave to amend in 14 days if the deficiencies identified in the First Amended Complaint can be cured.  The Clerk is directed to file the Reply, ECF No. 19-1, on the docket.

Entered this 30th day of November, 2020.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE