UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| RIKKI GUAJARDO, on behalf of herself, and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>SKECHERS USA, INC.,<br><br>      Defendant. | Case No. 4:19-cv-04104-SLD-JEH |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..................................................................................................................................2

    I.    PLAINTIFF SUFFICIENTLY PLEADS CLAIMS FOR CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES .................................................................................2

        A.    Plaintiff Has Alleged a Direct Statement with a Material Omission. ..............2
        B.    Plaintiff Adequately Pleads Proximate Causation. .........................................4
        C.    Plaintiff Pleads Facts Plausibly Inferring Skechers' Presale Knowledge
            of the Defect..........................................................................................................5

    II.    PLAINTIFF HAS STATED A CLAIM FOR UNJUST ENRICHMENT .......................7

    III.    PLAINTIFF CONTINUES TO STATE A CLAIM FOR INJUNCTIVE RELIEF ........8

## Table of Authorities

**Cases**                                                                                                                  **Page(s)**

*Bietsch v. Sergeant's Pet Care Prods.*, No. 15 C 5432, 2016 U.S. Dist. LEXIS 32928 (N.D. Ill. Mar. 15, 2016) .................................................................................................................. 4-5

*Block v. Lifeway Foods, Inc.*, No. 17 C 1717, 2017 U.S. Dist. LEXIS 143828 (N.D. Ill. Sep. 6, 2017) ........................................................................................................................................ 4

*Camasta v. Jos. A. Bank Clothiers*, 761 F.3d 732 (7th Cir. 2014) ................................................... 8

*Camasta v. Jos. A. Bank, Clothiers, Inc.*, No. 12-CV-7782, 2013 U.S. Dist. LEXIS 16509 (N.D. Ill. Feb. 7, 2013) ....................................................................................................................... 8

*Carrol v. S.C. Johnsons & Son, Inc.*, No. 17-cv-05828, 2018 U.S. Dist. LEXIS 57052 (N.D. Ill. Mar. 29, 2018) ..................................................................................................................... 8

*Cleary v. Philip Morris Inc.*, 656 F.3d 511 (7th Cir. 2011) ............................................................. 7

*Collins v. Interroyal Corp.*, 126 Ill. App. 3d 244 (1st Dist. 1984) ................................................. 7

*Connick v. Suzuki Motor Co. and De Bouse.* 880 F. Supp. 2d 801 (S.D. Ohio 2012) ............... 3, 5

*De Bouse v. Bayer*, 922 N.E.2d 309 (Ill. 2009) ........................................................................... 3, 4

*DOD Technologies v. Mesirow Ins. Services, Inc.*, 887 N.E.2d 1 (Ill. App. Ct. 2008) .................. 3

*Federico v. Freedomroads RV, Inc.*, No. 09-CV-2027, 2010 U.S. Dist. LEXIS 121107 (N.D. Ill. Nov. 10, 2010) ...................................................................................................................... 6

*Gavin v. AT&T Corp.*, 543 F. Supp. 2d 885 (N.D. Ill. 2008) ......................................................... 4

*Lake v. Unilever*, 964 F. Supp. 2d 893 (N.D. Ill. 2013) ................................................................. 5

*Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096 (E.D. Wis. 2016) ........................................ 8

*Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1 (Ill. App. Ct. 1st Dist. 2001) .................... 5

*In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772 (N.D. Ill. 2016) .................................................................................................................... 5, 6

*Scherr v. Marriott Intern., Inc.*, 703 F.3d 1069 (7th Cir. 2013) .................................................... 8

*Berenblat v. Apple, Inc.*, No. 08-4969, 2010 U.S. Dist. LEXIS 46052 (N.D. Cal. Apr. 7, 2010) . 6

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) .................................................... 6

**Statutes**

815 Ill. Comp. Stat. 505/2 .............................................................................................................. 2

**Rules**

Fed. R. Civ. P. 11 ........................................................................................................................... 7
Fed. R. Civ. P. 12 ........................................................................................................................... 4

**PRELIMINARY STATEMENT**

This action involves the design, development, manufacture, marketing, distribution and sale of dangerous and defective children's lighted footwear featuring rechargeable and non-rechargeable technology for several Skechers shoes (the "Lighted Shoes"). The Lighted Shoes were distributed and sold with several substandard design and/or manufacturing defects that pose a serious safety hazard to children due to an inadequate electrical system contained in the Lighted Shoes. The defects can lead to multiple failure modes, including a dangerous electrical or thermal event that can lead to excessive heat or actual fire, which can cause skin burns (the "Defect").

Skechers USA, Inc. ("Skechers"), the Lighted Shoes' manufacturer, is a multi-billion dollar footwear company that describes itself as a "leading kids footwear brand," with approximately thirteen percent (13%) of its production including children's footwear. Second Amended Complaint ("SAC"), ECF No. 22, ¶ 19. Skechers sold hundreds of thousands (and possibly millions) of the defective Lighted Shoes throughout the United States, but never informed consumers about the Defect. *Id*. ¶ 30. At all relevant times, Skechers knew or should have known of the Defect, but nevertheless misrepresented to consumers that the Lighted Shoes were safe for their children to wear when they were not, and then actively concealed and failed to disclose the Defect to consumers. *Id*. ¶ 7.

According to independent expert analysis conducted on behalf of Plaintiff, the Lighted Shoes contain a number of design or manufacturing flaws including, without limitation, an inadequate electrical system powered by batteries, which can lead to multiple failure modes, including a dangerous electrical or thermal event that can lead to heat, fire, or the release of electrolyte vapors that can cause skin burns, making the shoes unsuitable for their intended use (the "Defect"). *Id*. ¶¶ 6, 32-34. Skechers knew or should have known when it sold the Lighted

Shoes to Plaintiff and Class Members that the Lighted Shoes suffered from the Defect, and that this Defect caused the Lighted Shoes to function improperly during their expected useful life, represented an unreasonable risk to children, and might result in significant personal injury and/or proper damage to consumers and the public.

Plaintiff Guarjardo purchased the Lighted Shoes for her child upon the reasonable belief that they were safe for use on children's feet and would function as intended. *Id.* ¶ 11. Ms. Guajardo was unaware of the Defect when she purchased the Lighted Shoes and would not have purchased them had she been aware of the Defect. *Id.* ¶ 66. Following Ms. Guarjardo's purchase, the Lighted Shoes failed as a result of the Defect, causing persistent personal injuries, including swelling, burning, blistering, and pain on her child's feet. *Id.* ¶ 64.

Plaintiff filed a Class Action Complaint against Skechers on May 16, 2019, alleging breach of contract, breach of express and implied warranty, unjust enrichment, negligence, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "IFCA"), and violation of the Illinois Uniform Deceptive Trade Practices Act (the "UDTPA"). ECF No. 1. Skechers moved to dismiss the Complaint, which the Court granted on November 30, 2020 with leave to amend. ECF No. 20. Plaintiff filed her SAC on December 14, 2020. ECF No. 22. Skechers subsequently filed its second motion to dismiss on December 28, 2020. ECF No. 25.

**ARGUMENT**

**IV.     PLAINTIFF SUFFICIENTLY PLEADS CLAIMS FOR CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES**

**V. Plaintiff Has Alleged a Direct Statement with a Material Omission.**

Under the ICFA, "the concealment, suppression or omission of any material fact" is unlawful. 815 Ill. Comp. Stat. 505/2. To state a claim under the ICFA, a plaintiff must establish "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on

2

the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception." *De Bouse v. Bayer*, 922 N.E.2d 309, 313 (Ill. 2009). If alleging that the deceptive act or practice occurred via omission, Illinois law requires that the omission occur within the context of an affirmative communication. *Id*. at 316. In the SAC, Plaintiff identifies several communications by Skechers through its warranties, advertising, labeling, and packaging. SAC ¶¶ 55, 60, 61, 63. Plaintiff further alleges that Skechers misrepresented that the shoes were safe for normal wear by children, when it knew they were not. *Id*. ¶¶ 7, 8. Other courts interpreting Illinois law have also found that the sale of a good can constitute a "statement" under the ICFA that the good is safe for its ordinary use. The court in *In re Porsche Cars* found that such a ruling was consistent with the Illinois Supreme Court's rulings in *Connick v. Suzuki Motor Co.* and *De Bouse*. 880 F. Supp. 2d 801, 849-850 (S.D. Ohio 2012) (finding that the distribution of the vehicle constituted a statement under the ICFA that the vehicles were safe for their ordinary, intended use).

      Plaintiff further bases her ICFA claim on Skechers' failure to disclose and warn of the Defect in its Lighted Shoes. Plaintiff alleges that Skechers knew or should have known of the Defect based on customer complaints, customer claims, lawsuits filed, and the company's internal and external testing. SAC ¶¶ 44-56. Plaintiff further alleges that Skechers "actively concealed and failed to disclose the Defect" and "Skechers' fraudulent concealment of the true characteristics of its Lighted Shoes was material to Plaintiff and the Illinois Class" SAC ¶¶ 10, 93. In other words, Skechers was well aware of a significant and material safety hazard in its Lighted Shoes and knowingly failed to disclose the Defect to consumers. Skechers' omission was material to Plaintiff because she would not have purchased the Lighted Shoes had she been made aware of the Defect. SAC ¶ 11; *DOD Technologies v. Mesirow Ins. Services, Inc*., 887 N.E.2d 1, 10 (Ill. App. Ct. 2008)

3

("An omission is 'material' if the plaintiff would have acted differently had it been aware of it, or if it concerned the type of information upon which it would be expected to rely in making its decision to act"). Accordingly, Plaintiff's allegations state a claim under the ICFA. *See Lake v. Unilever*, 964 F. Supp. 893, 916 (N.D. Ill. 2013) (dismissing Plaintiffs' ICFA claims based on alleged misrepresentations but allowing ICFA claims based on Unilever's failure to disclose and warn of a defect).

## VI. Plaintiff Adequately Pleads Proximate Causation.

The Illinois Supreme Court has held that, in order to state a claim under the ICFA, the plaintiff "must actually be deceived by a statement or omission that is made by the defendant." *De Bouse*, 922 N.E.2d 309, 316 (Ill. 2009). If a plaintiff cannot show that she relied on an allegedly deceptive statement by the defendant, then she cannot prove proximate cause. *Id*. At the pleading stage, "[t]he required allegation of proximate cause is minimal since that determination is best left to the trier of fact." *Gavin v. AT&T Corp.*, 543 F. Supp. 2d 885, 911 (N.D. Ill. 2008). In this case, Plaintiff alleges that she viewed the shoe labels and packaging materials. SAC ¶¶ 25, 58-61. Plaintiff further alleges that "[b]ased on the representations in Skechers' advertisements and packaging, Plaintiff Guajardo trusted that the Lighted Shoes were safe for her son to wear, and trusted that the product was fit for its intended purpose of children's everyday footwear." *Id*. at ¶ 63. This is all Plaintiff is required to allege under a Rule 12(b)(6) motion. *Block v. Lifeway Foods, Inc.*, No. 17 C 1717, 2017 U.S. Dist. LEXIS 143828, at *16 (N.D. Ill. Sep. 6, 2017) ("Block is required to allege only that he purchased the kefir based on Lifeway's misrepresentations and that he would not have purchased it if he had known otherwise"). Such allegations have been found sufficient to withstand a motion to dismiss. *See Bietsch v. Sergeant's Pet Care Prods.*, No. 15 C 5432, 2016 U.S. Dist. LEXIS 32928, at *26 (N.D. Ill. Mar. 15, 2016) ("[a]lthough Plaintiffs'

4

complaint may not use the exact words Sergeant's believes are necessary, the allegations of exposure to the Pur Luv Treats' packaging reasonably suggest that Plaintiffs' decision to purchase the treats was connected to the allegedly deceptive statements, particularly when combined with Plaintiffs' allegation of deception"). Furthermore, as discussed herein, courts interpreting *Bouse* and Illinois law have found that the sale of a product can constitute a statement under the ICFA. *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 850 (S.D. Ohio 2012) (holding that plaintiff stated an ICFA claim where PCNA's sale and distribution of the vehicle constituted an actionable misrepresentation and plaintiff alleged that he would not have purchased the vehicle had he known of the alleged defect.) Plaintiff makes the same allegations here: Skechers continues to sell the defective Lighted Shoes while actively misrepresenting the Defect, and Plaintiff would not have purchased the Skechers Energy Lights shoes had she known of the Defect. SAC ¶¶ 55, 66. Accordingly, Plaintiff has shown that Skecher's misrepresentations and material omissions proximately caused her damages.

### VII. Plaintiff Pleads Facts Plausibly Inferring Skechers' Presale Knowledge of the Defect.

Plaintiff has alleged facts that plausibly infer that Skechers was aware of the Defect at the time of sale. If an IFCA claim is based on an alleged concealment, "plaintiffs must establish that the fact concealed was known to the seller at the time of concealment." *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 14 (Ill. App. Ct. 1st Dist. 2001). Plaintiff alleges that Skechers knew or should have known of the Defect based on customer complaints, customer claims, lawsuits filed, and the company's internal and external testing. SAC ¶¶ 44-56. Similar allegations have been found to state claims under the ICFA. *Lake*, 964 F. Supp. 2d at 916 (citing customer complaints to Unilever); *In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 815 (N.D. Ill. 2016). Independent expert analysis further details the

inadequate electrical system in the Lighted Shoes that can cause failure modes, leading to burns and other injuries in children. SAC ¶¶ 32-41. The SAC plausibly infers that Skechers, as a sophisticated entity, has "the capacity to conduct quality and safety testing" that would have yielded the same results. *Id*. ¶ 45. Plaintiff contends that discovery into Skechers' testing and quality control analysis will further substantiate her claims relating to Skechers' knowledge of the Defect. Finally, the close temporal proximity between Plaintiff's purchase of the shoes and the manifestation of the Defect suggests a plausible inference that Skechers was aware of the Defect at the time of sale. *Federico v. Freedomroads RV, Inc*., No. 09-CV-2027, 2010 U.S. Dist. LEXIS 121107, at *25 (N.D. Ill. Nov. 10, 2010). Taking these facts in the light most favorable to Plaintiff, a reasonable inference exists regarding customer complaints and Skechers' knowledge of the Defect.

In support of its argument, Skechers continues to misleadingly cite the out-of-circuit decision in *Wilson v. Hewlett-Packard Co*., 668 F.3d 1136, 1147 (9th Cir. 2012). According to Skechers' parenthetical, the Ninth Circuit held in *Wilson* that "complaints posted on a manufacturer's webpage merely establish the fact that some consumers were complaining" and "are insufficient to show" that the manufacturer knew of the defect. Def. Mot. at 13. Plaintiff has pointed out in her response to Skecher's first motion to dismiss that Skechers' parenthetical misleadingly combines holdings from two different cases – *Wilson* and *Berenblat v. Apple, Inc*., No. 08-4969, 2010 U.S. Dist. LEXIS 46052 (N.D. Cal. Apr. 7, 2010). ECF No. 18 at 9-10. Notwithstanding Skecher's creative citation, neither *Wilson* nor *Berenblat* hold that customer complaints on a manufacturer's webpage are insufficient to show knowledge. First, Wilson holds that a combination of *undated* and *post-sale* complaints cannot prove *pre-sale* knowledge. Second, *Berenblat* holds that consumer complaints on a manufacturer's webpage *by themselves* do not

6

establish fraudulent concealment. Again, the true holdings of both cases do not support Skechers' argument.

Lastly, Skechers claims that similar lawsuits with similar facts, filed prior to a plaintiff's purchase, cannot support a manufacturer's pre-sale knowledge. Def. Br. at 13. This is incorrect. Under Illinois law, "[e]vidence of substantially similar prior lawsuits against defendant are admissible to show that defendant had notice of the defect before plaintiff was injured." *Collins v. Interroyal Corp.*, 126 Ill. App. 3d 244, 256 (1st Dist. 1984). For its argument, Skechers cites four cases, none of which are consumer fraud claims. Skechers has not cited, and a diligent search by Plaintiff has not revealed, a single case in any jurisdiction in which a plaintiff in a consumer protection action has received Rule 11 sanctions for citing to purportedly similar lawsuits alleging similar injuries from related product lines in an effort to establish a manufacturer's pre-sale knowledge. Skechers' misguided attempt to draw relevant parallels to the instant matter are misplaced. Plaintiff does not rely "exclusively" on *Foster* or merely "piggyback" on its allegations. Def. Br. at 13. Plaintiff cites to *Foster* only in regard to the knowledge element of Plaintiff's fraud claim, which is alleged in combination with other examples of pre-sale knowledge, such as customer complaints, customer claims, and the manufacturer's testing. SAC ¶¶ 44-56.

## VIII. PLAINTIFF HAS STATED A CLAIM FOR UNJUST ENRICHMENT

Where a claim for unjust enrichment rests on the same improper conduct alleged in another claim, the unjust enrichment claim "will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). As shown in Section I, Plaintiff has stated claims under the Illinois CFA and UDTPA. Accordingly, Plaintiff's unjust enrichment claim survives Defendant's motion as well.

### IX.     PLAINTIFF CONTINUES TO STATE A CLAIM FOR INJUNCTIVE RELIEF

In seeking injunctive relief, a plaintiff must show a "'real and immediate' threat of future violations of their rights[.]" *Scherr v. Marriott Intern., Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Defendant argues that because Plaintiff is aware of the Defect and Skechers' misrepresentations, she cannot suffer any future harm. Def. Mem. at 15. Defendant's argument is based primarily on an overstated interpretation of the Seventh Circuit's holding in *Camasta v. Jos. A. Bank Clothiers*, 761 F.3d 732 (7th Cir. 2014). *See Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1111 (E.D. Wis. 2016).[1] *Camasta* is further distinguishable because the plaintiff in that case only made a single allegation that "there is a substantial danger that [the defendant's] wrongful retail practices will continue." *Camasta v. Jos. A. Bank, Clothiers, Inc.*, No. 12-CV-7782, 2013 U.S. Dist. LEXIS 16509, at *6 (N.D. Ill. Feb. 7, 2013). Courts in this District have held that a plaintiff may pursue injunctive relief for deceptive advertising where the defendant "continues to manufacture, distribute, and deceptively label and advertise the Products," even if the plaintiff is aware of the deceptive conduct. *Carrol v. S.C. Johnsons & Son, Inc.*, No. 17-cv-05828, 2018 U.S. Dist. LEXIS 57052, at *8-9 (N.D. Ill. Mar. 29, 2018) (finding plaintiff had standing to pursue injunctive relief for deceptive labeling on sunscreen products, rejecting defendant's argument that plaintiff was not entitled to injunctive relief because he was aware of defendant's deceptive conduct) (citing *Muir v. NBTY, Inc.*, No. 15 C 9835, 2016 U.S. Dist. LEXIS 129494, at *33-34 (N.D. Ill. Sept. 22, 2016)). Here, Plaintiff alleges that

---

[1] In *Le*, the court explained that "[t]he *Camasta* court merely repeated the well-accepted rule that the standing inquiry for the purpose of injunctive relief is probabilistic, i.e., is there 'likelihood' that some harm will be suffered by the plaintiff in the future? Interpreting the *Camasta* court's dicta to instead announce a broad rule that strips a prospective plaintiff of standing to seek an injunction solely because they are aware of a past wrong overreads that court's language and leads to anomalous results."

Skechers continues to manufacture, distribute, and deceptively label and advertise the Lighted Shoes for children's use, while it actively misrepresents the Defect in the Lighted Shoes. SAC ¶¶ 9, 55. The allegations confer sufficient standing for Plaintiff to seek injunctive relief under Illinois law.

Finally, Defendant reasserts its argument (for the purpose of preserving the issue for appeal), that Plaintiff also lacks standing to make any claims on behalf of purchasers of non-rechargable lighted shoes. Def. Br. at 15. The Court has previously rejected this argument as premature, *see* Order at 14-16, and Plaintiff declines to make additional arguments on this point.

For the reasons stated herein, the Court should deny Defendant's motion to dismiss in its entirety.

Date: January 11, 2021

*s/Gregory F. Coleman*
Gregory F. Coleman
greg@gregcolemanlaw.com
Lisa A. White
Lisa@gregcolemanlaw.com
GREG COLEMAN LAW PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

Kyle A. Shamberg
CARLSON LYNCH LLP
111 W. Washington Street
Suite 1240
Chicago, IL  60602
Main:   312.750.1265
kshamberg@carlsonlynch.com

*Attorneys for Plaintiff and the Putative Class*

9

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on January 11, 2021, the foregoing **Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint** was filed electronically with the Clerk of Court using the ECF system, which sent notification of such filing to all attorneys properly noticed in the case.

*s/Gregory F. Coleman*
Gregory F. Coleman
