UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| RIKKI GUAJARDO, on behalf of herself, and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:19-cv-04104-SLD-JEH ) |
| SKECHERS USA, INC., | ) ) ) |
| Defendant. | ) |

Before the Court are Defendant Skechers USA, Inc.'s ("Skechers") motion to dismiss Plaintiff Rikki Guajardo's second amended complaint (the "Second Amended Complaint"), ECF No. 24, and motion for leave to file a reply in support thereof, ECF No. 28. For the reasons stated below, both motions are GRANTED.

## BACKGROUND

The gist of this case is well-established. *See* Nov. 30, 2020 Order 1–2, ECF No. 20.[1] Briefly, Guajardo purchased a pair of Skechers Energy Lights ("Energy Lights")—children's shoes that light up—for her son at an Illinois Kohl's in January 2018. *See* Second Am. Compl. ¶ 57, ECF No. 22. Her son wore them several times to his detriment: On one occasion, they radiated heat that was so intense, he had to remove them and on another, they "became so hot that they caused a painful heat blister on the back of his foot." *Id.* ¶ 64. Guajardo alleges Energy Lights "contain a number of design or manufacturing flaws, including, without limitation, an inadequate electrical system powered by batteries, which can lead to multiple failure modes,

---

[1] The factual allegations in the Second Amended Complaint, ECF No. 22, are taken as true. *See Degroot v. Client Servs., Inc.*, 977 F.3d 656, 659 (7th Cir. 2020) ("We accept as true all factual allegations in the complaint and draw all permissible inferences in plaintiff's favor." (quotation marks and alterations omitted)).

including a dangerous electrical or thermal event that can lead to heat, fire, or the release of electrolyte vapors that can cause skin burns." *Id.* ¶ 6.

On May 16, 2019, Guajardo filed her complaint, ECF No. 1, and a few months later, she filed her first amended complaint, ECF No. 11,[2] which alleged claims for breach of contract and common law warranty, First Am. Compl. ¶¶ 76–83; unjust enrichment, *id.* ¶¶ 84–89; negligence, *id.* ¶¶ 90–103; violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1–12, *id.* ¶¶ 104–22; breach of express warranty, 810 ILCS 5/2-313, *id.* ¶¶ 123–36; breach of the implied warranty of merchantability, 810 ILCS 5/2-314, *id.* ¶¶ 137–49; and violation of Illinois's Uniform Deceptive Trade Practices Act (the "UDTPA"), 815 ILCS 510/1–7, *id.* ¶¶ 150–65. The Court, in a November 30, 2020 Order, dismissed the claims for breach of contract and common law warranty and breach of express warranty with prejudice and the remaining claims without prejudice. *See* Nov. 30, 2020 Order 16.

On December 14, 2020, Guajardo brought the Second Amended Complaint, which re-pleads her claims for violation of the ICFA, Second Am. Compl. ¶¶ 80–100; violation of the UDTPA, *id.* ¶¶ 101–16; and unjust enrichment, *id.* ¶¶ 117–22. Skechers filed a motion to dismiss, arguing none of her claims pass muster under Federal Rule of Civil Procedure ("Rule") 8. *See* Mem. Supp. Mot. Dismiss 6, ECF No. 25. Guajardo responded on January 11, 2021, Mem. Opp'n Mot. Dismiss, ECF No. 27, and a few days later, Skechers filed its motion for leave to file a reply and attached a proposed reply, ECF No. 28-1.

---

[2] Guajardo filed her first amended complaint after Skechers filed a motion to dismiss the original, Mot. Dismiss, ECF No. 9, which the first amended complaint mooted, *see* Sept. 10, 2019 Text Order.

# DISCUSSION

## I. The Motion for Leave to File a Reply

The Local Rules do not permit a party to file a reply brief (except when it supports a summary judgment motion) without leave of Court, *see* CDIL-LR 7.1(B)(3), and to request leave, a party must file a motion for leave and attach the proposed brief as an exhibit thereto, *see id.* 7.1(F). Reply briefs are typically permitted "if the party opposing a motion has introduced new and unexpected issues" in her response and a reply would "be helpful" to the disposition of the motion. *Shefts v. Petrakis*, No. 10-cv-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011). Relatedly, a court may also permit a reply "in the interest of completeness." *See Zhan v. Hogan*, Case No. 4:18-cv-04126-SLD-JEH, 2018 WL 9877970, at *2 (C.D. Ill. Dec. 18, 2018) (quotation marks omitted).

Skechers has complied with the Local Rules and Guajardo does not oppose its motion. Because Skechers' proposed reply is helpful to the Court and in the interest of completeness, its motion for leave to file a reply is granted.

## II. The Motion to Dismiss

### A. Legal Standards

In deciding a motion to dismiss under Rule 12(b)(6), all factual allegations are assumed to be true and "all permissible inferences" are "draw[n] . . . in plaintiff's favor." *See Degroot v. Client Servs., Inc.*, 977 F.3d 656, 659 (7th Cir. 2020) (quotation marks and alteration omitted). However, this principle does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Neither do "naked

assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Under Rule 8(a)(2), a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint need contain only "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To show that the plaintiff is entitled to relief, the complaint must permit the court to infer more than the mere possibility of misconduct. *Id.* If the plaintiff's pleading falls short of this standard, dismissal is warranted.

Claims "alleging fraud or mistake" must additionally satisfy Rule 9(b)'s heightened pleading standard. Because Guajardo's ICFA and UDTPA claims both rest on allegations of deceptive conduct, they both are subject to this standard. *See, e.g.*, *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) ("We analyze ICFA claims of deception under the heightened pleading standard of [Rule] 9(b)." (citation omitted)); *Marvellous Day Elec. (S.Z.) Co. v. Ace Hardware Corp.*, Nos. 11 C 8756, 11 C 8768, 2013 WL 4565382, at *9 (N.D. Ill. Aug. 27, 2013) ("The heightened pleading standard of Rule 9(b) applies to UDTPA claims as well." (collecting cases)). Under Rule 9(b), "the plaintiff must plead with particularity the circumstances constituting fraud. Specifically, the complaint must identify the who, what, when, where, and how of the alleged fraud." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019) (citation and quotation marks omitted).

4

B.  Analysis

1.  The ICFA Claim

Guajardo re-pleads her ICFA claim, alleging "Skechers concealed, suppressed, and intentionally omitted material facts concerning the [Energy Lights]." *See* Second Am. Compl. ¶ 87.  The ICFA prohibits "unfair or deceptive acts or practices, including . . . deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment . . . in the conduct of any trade or commerce." 815 ILCS 505/2.  A plaintiff bringing an ICFA claim must show "(1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive act." *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (citing *De Bouse v. Bayer AG*, 922 N.E.2d 309, 313 (Ill. 2009)).

In the November 30, 2020 Order, the Court dismissed the previous iteration of this claim because Guajardo did not allege any "direct statements that contain material omissions," only "opportunities or locations where Skechers could have disclosed the alleged defect." *See* Nov. 30, 2020 Order 9.  Indeed, as the Court noted, a plaintiff alleging an ICFA claim "must actually be deceived by a statement or omission" and "[i]f there has been no communication with the plaintiff, there have been no statements and no omissions." *See De Bouse*, 922 N.E.2d at 316; Nov. 30, 2020 Order 9 ("In other words, a plaintiff must allege an omission from a communication, not a general failure to disclose.").  Guajardo's allegations regarding Skechers' advertising, "which only provided succinct information about the shoes' light-up features and

5

charging instructions," *see* Nov. 30, 2020 Order 9 (citations omitted), accordingly failed to plead the "deceptive practice" element, *see id.* at 10.

The issue here is whether Guajardo, given another chance to plausibly plead an ICFA claim, alleges any direct statements from Skechers that contain material omissions. While Guajardo included two new statements from Skechers in her Second Amended Complaint, *see* Mem. Supp. Mot. Dismiss 1–2 (citing Second Am. Compl. ¶¶ 22, 23), she does not address them in her response. Thus, any argument that those new statements support her ICFA claim is waived. *See ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1050 (N.D. Ill. 2017) ("Failure to respond to an argument in a motion to dismiss permits an inference of acquiescence to the argument which acts as a waiver." (citing *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001); *Cent. States, Se. & Sw. Areas Pension Fund v. Midwest Motor Exp., Inc.*, 181 F.3d 799, 808 (7th Cir. 1999)) (other citation omitted)).

In her response, Guajardo merely pushes back against the Court's conclusion that "a plaintiff must allege an omission from a communication, not a general failure to disclose," *see* Nov. 30, 2020 Order 9, by continuing to rely upon her rehashed allegations, *see, e.g.*, Mem. Opp'n Mot. Dismiss 3 ("In the [Second Amended Complaint], Plaintiff identifies several communications by Skechers through its warranties, advertising, labeling, and packaging." (citing Second Am. Compl. ¶¶ 55, 60–61, 63)), and arguing "[o]ther courts interpreting Illinois law have also found that the sale of a good can constitute a 'statement' under the ICFA that the good is safe for its ordinary use," *id.* at 3. However, she only cites one case: *In re Porsche Cars North America, Inc.*, 880 F. Supp. 2d 801 (S.D. Ohio 2012).[3] While that case supports her

---

[3] There is no reason why she could not have cited this case in her response to Skechers' motion to dismiss her first amended complaint, Mem. Opp'n Mot. Dismiss First Am. Compl., ECF No. 18, as it was decided years before she brought this case.

proposition, it is an outlier that was decided by a district court in another circuit. *See, e.g.*, *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 720 (N.D. Ill. 2020) (dismissing an ICFA claim based on a material omission theory because the plaintiff failed to "identify any particular direct statements from Defendant that contain[ed] material omissions").

      Moreover, this Court does not find the case persuasive. The *Porsche* court first cited *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584 (Ill. 1996), in which the Illinois Supreme Court held the plaintiffs stated an ICFA material omission claim by alleging the defendant "committed consumer fraud based on the mere sale of the [relevant vehicle] without disclosure of the safety risks, in that the offering for sale of a consumer product constitutes a representation that the product is reasonably safe for its intended use." *See id.* at 595 (alterations omitted); *see also id.* ("We find that plaintiffs adequately pled a consumer fraud violation based on a material omission by Suzuki. Plaintiffs alleged that Suzuki was aware of the Samurai's safety problems, including its tendency to roll over and its inadequate protection for passengers. Plaintiffs further alleged that Suzuki failed to disclose these defects. Finally, plaintiffs alleged that the safety problems of the Samurai were a material fact in that they would not have purchased the vehicles if Suzuki had disclosed the Samurai's safety risk."). But the court later clarified this holding, noting the plaintiffs there received communications from the defendant through a magazine review for which the defendant provided misleading information and therefore relied not on a "market theory," but on "direct statements from [the defendant] that contained both misleading statements and material omissions." *See De Bouse*, 922 N.E.2d at 316. It then reiterated "[a] consumer cannot maintain an action under the [ICFA] when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant." *See id.*[4]

---

[4] The *De Bouse* court discussed and distinguished *Connick* while analyzing the ICFA's causation element and more specifically, determining "whether a plaintiff may recover when no communication from the defendant reaches the

The *Porsche* court conceded that *De Bouse* limited the reach of *Connick*. *See Porsche*, 880 F. Supp. 2d at 849 (citation omitted). But it noted the *De Bouse* court "then went on . . . to consider the question of whether 'the act of offering a product for sale in Illinois is a representation that the product is reasonably safe for its intended and ordinary use, such that a failure to disclose risks is a violation of the [ICFA].'" *Id.* (quoting *De Bouse*, 922 N.E.2d at 317). While the *De Bouse* court concluded "the mere sale of a prescription medication cannot be a representation which serves as the basis for a consumer fraud claim," *De Bouse*, 922 N.E.2d at 318, the *Porsche* court found *De Bouse* supports the idea the mere sale of a car can, *see Porsche*, 880 F. Supp. 2d at 850. The court reasoned the *De Bouse* court based its conclusion on the fact a drug manufacturer cannot say with certainty prescription drugs will be reasonably safe for all consumers and cars, in contrast, "can be manufactured in a condition that is reasonably safe for all consumers." *See id.* at 849–50 (citations omitted). In other words, the *Porsche* court found the *De Bouse* court created an exception to the direct communication rule for products that can be manufactured reasonably safely.

But the *De Bouse* court did no such thing. First, the court only said that whether offering a product for sale is a representation it is reasonably safe "*may* depend on the nature of the product sold" and limited its holding to the prescription drug context. *De Bouse*, 922 N.E.2d at 317. Second, no other Illinois court has adopted such an exception. It is easy to see why, as an exception to the direct communication rule for "reasonably safe" products would likely subsume the rule. Indeed, most products sold to consumers (if not the vast majority of them) are

---

plaintiff, whether directly or indirectly, and when the defendant withholds material information from consumers." *De Bouse*, 922 N.E.2d at 314. However, there is no reason this discussion cannot apply to the deceptive conduct element, as the Northern District of Illinois demonstrated in *O'Connor*. *See* 477 F. Supp. 3d at 719–20 (discussing the interplay between *Connick* and *De Bouse* and concluding based on *De Bouse*, the plaintiff failed to state an ICFA claim based on an omission theory because he "d[id] not identify any particular direct statements from Defendant that contain[ed] material omissions").

"reasonably safe"; "unavoidably unsafe" products, to which the *Porche* court's exception would not apply, are less common. *Cf. id.* (basing its holding on Restatement (Second) of Torts § 402A cmt. k (Am. L. Inst. 1965), which provides "[t]here are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use," and noting "[c]omment *k* offers an exception to the general rule making a seller strictly liable even when the product was properly prepared" and "recogni[zes] that prescription drugs may be 'unavoidably unsafe'" (citations omitted)). Adopting the *Porsche* court's exception would undercut *De Bouse*'s requirement that "[a] consumer cannot maintain an action under the [ICFA] when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant," *see id.* at 316, which has consistently been reiterated by both Illinois and Seventh Circuit courts alike. *See, e.g.*, *Platinum Partners Value Arbitrage Fund, Ltd. P'Ship v. Chi. Bd. Options Exch.*, 976 N.E.2d 415, 425 (Ill. App. Ct. 2012) ("[I]n a consumer fraud action the plaintiff must actually be deceived by a statement or omission." (citing *De Bouse*, 922 N.E.2d at 314) (other citation omitted)); *Darne v. Ford Motor Co.*, No. 13 CV 03594, 2017 WL 3836586, at *10 (N.D. Ill. Sept. 1, 2017) ("Under the ICFA, an 'omission' is an omission from a communication, rather than a general failure to disclose." (citing *De Bouse*, 922 N.E.3d at 316)). *De Bouse* does not bless an ICFA omission claim based on the mere sale of a product that is reasonably safe for all consumers.

     For the foregoing reasons, Guajardo's ICFA claim fails to satisfy Rule 8, let alone Rule 9(b). Accordingly, this claim is dismissed and the Court need not reach the rest of Skechers' ICFA-related arguments.

### 2. The UDTPA Claim

Guajardo and Skechers agree the issues pertaining to Guajardo's ICFA claim are equally relevant to her UDTPA claim.[5] *See* Mem. Supp. Mot. Dismiss 7–14 (arguing both claims should be dismissed for the same reasons); Mem. Opp'n Mot. Dismiss 2–7 (arguing both claims should survive for the same reasons). Indeed, both claims are based on the same conduct. *Compare* Second Am. Compl. ¶¶ 80–100 (alleging the ICFA claim), *with id.* ¶¶ 101–16 (alleging the UDTPA claim). Because "a deceptive misrepresentation or omission" is a necessary element of both claims, *see Schwebe v. AGC Flat Glass N. Am., Inc.*, No. 12 C 9873, 2013 WL 2151551, at *2–3 (N.D. Ill. May 16, 2013) (citing *De Bouse*, 922 N.E.2d at 318), the UDTPA claim is dismissed as well.

But even if Guajardo had alleged a deceptive misrepresentation or omission, there is a UDTPA-specific reason for dismissing her UDTPA claim: She failed to allege she is likely to be damaged in the future by Skechers' allegedly deceptive trade practices. The UDTPA "was enacted to prohibit unfair competition and was not intended to be a consumer protection statute." *Chabraja v. Avis Rent A Car Sys., Inc.*, 549 N.E.2d 872, 876 (Ill. App. Ct. 1989) (citation omitted). Damages cannot be recovered under the UDTPA. *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 917 (N.D. Ill. 2013) (citations omitted); *Glazewski v. Coronet Ins. Co.*, 483 N.E.2d 1263, 1267 (Ill. 1985). Nevertheless, a consumer may obtain an injunction thereunder if she can show she is likely to be damaged in the future by a defendant's conduct. *Smith v. Prime Cable of Chi.*, 658 N.E.2d 1325, 1337 (Ill. App. Ct. 1995) (citations omitted); *see also* 815 ILCS 510/3

---

[5] Guajardo alleges Skechers engaged in a deceptive trade practice under the UDTPA by "represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have," 815 ILCS 510/2(a)(5), "represent[ing] that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another," *id.* § 510/2(a)(7), and "engag[ing] in other conduct which similarly creates a likelihood of confusion or misunderstanding," *id.* § 510/2(a)(12). *See* Second Am. Compl. ¶ 103.

("A person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief . . . ."). Likelihood of future harm, aside from being an element of Article III standing to seek injunctive relief, *see Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)), "is an element of liability" of a UDTPA claim, *see ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1050 (N.D. Ill. 2017) (citing *Glazewski*, 483 N.E.2d at 1267 (dismissing a UDTPA claim because the plaintiffs "kn[e]w the problems associated with [what they purchased], and, armed with that knowledge, c[ould] avoid it. . . . [and were] not persons who [were] likely to be damaged by [the] defendants' conduct in the future" (quotation marks omitted))).

In *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014), the Seventh Circuit found the plaintiff could not obtain an injunction under the UDTPA because he did not properly allege the defendant's conduct would cause him future harm, *id.* at 740 (citation omitted), noting his claim was "based solely on the conjecture that because [the defendant] harmed him in the past, they [sic] are likely to harm him in the future," *id.*, and "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief," *id.* at 740–41 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)) (alteration in original). While this finding is dicta,[6] "[m]ost courts to address similar circumstances have held that absent some concrete basis to conclude that the plaintiff[] will or must purchase the product again in the future and be deceived, [it] cannot meet the standing requirements for injunctive relief." *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 702 (N.D. Ill. 2020) (quotation marks

---

[6] Numerous district courts have acknowledged *Camasta*'s UDTPA discussion is dicta. *E.g.*, *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 702 (N.D. Ill. 2020) (footnote omitted). Indeed, there was no UDTPA claim at issue therein. *Cf. Camasta*, 761 F.3d at 734 (stating the plaintiff "filed suit . . . alleging violations of the [ICFA]"). But dicta, while not binding, can certainly be persuasive. *See In re Herbal Supplements Mktg. & Sales Pracs. Litig.*, No. 15-cv-5070, 2017 WL 2215025, at *8 (N.D. Ill. May 19, 2017) (St. Eve, J.) (finding the consumer fraud plaintiffs could not seek injunctive relief because "they face[d] no real immediate threat of future injury" and relying on *Camasta* as persuasive authority).

omitted). "Indeed, the UDTPA's future harm requirement frequently proves problematic for plaintiffs," *Fullerton v. Corelle Brands, LLC*, Case No. 18-cv-4152, Case No. 18-cv-4198, 2019 WL 4750039, at *12 (N.D. Ill. Sept. 30, 2019) (citation omitted), as "[t]he problem inherent in [UDTPA] actions is the inability to allege facts which would indicate that the plaintiff is 'likely to be damaged,'" because "[o]rdinarily, the harm has already occurred, thus precluding a suit for injunctive relief," *Brooks v. Midas-Int'l Corp.*, 361 N.E.2d 815, 821 (Ill. App. Ct. 1977). As one court recently explained:

> Once a plaintiff knows that a product is deficient, he or she is unlikely to purchase it again, and therefore unlikely to sustain future harm. A "fool me once" plaintiff does not need an injunction if he or she is not going to buy the product again anyway. There is no risk of "fool me twice," so there is no basis for an injunction.

*Geske*, 503 F. Supp. 3d at 702.

Guajardo does not plausibly allege she is likely to be damaged in the future by Skechers' allegedly deceptive trade practices. Guajardo alleges there is an "extremely high likelihood that [she] and Illinois Class members may personally suffer future damages from the failure of Skechers' [Energy Lights]." Second Am. Compl. ¶ 116. But this is precisely the type of "speculative claim" that was rejected in *Camasta*. *See Camasta*, 761 F.3d at 741 ("Since Camasta is now aware of [the defendant's] sales practices, he is not likely to be harmed by the practices in the future. Without more than the speculative claim that he will again be harmed by [the defendant], Camasta is not entitled to injunctive relief."). While Guajardo also alleges Skechers continues to advertise and sell Energy Lights while failing to warn they are defective and thereby mislead consumers into believing they are safe for children, *see* Second Am. Compl. ¶¶ 9, 55, it does not matter whether Skechers continues to sell them if she does not allege she is likely to purchase them again. *See Geske*, 503 F. Supp. 3d at 703 (finding the plaintiff failed to allege injunctive relief standing in connection with a UDTPA claim because "she does not allege

12

that she or any of the class members are likely to purchase the product again" (citations omitted)).  Indeed, while Skechers may still be selling the Energy Lights, Guajardo, knowing of the claimed defects and business practices, can simply avoid them by not buying them again. *See, e.g.*, *Demedicis v. CVS Health Corp.*, Case No. 16-cv-5973, 2017 WL 569157, at *2 (N.D. Ill. Feb. 13, 2017) (dismissing a UDTPA claim because the plaintiff did not allege "that he is likely to keep buying products from [the] [d]efendants with the knowledge of their allegedly deceptive practices").  Without allegations indicating Guajardo is likely to purchase Energy Lights again, her UDTPA claim cannot survive a motion to dismiss, as allegations of past harm, without more, cannot establish injunctive relief standing.

Guajardo cites other courts that have a more liberal view of likelihood of future harm pleading requirements.  Indeed, in *Carrol v. S.C. Johnsons & Son, Inc.*, No. 17-cv-05828, 2018 WL 1695421 (N.D. Ill. Mar. 29, 2018), the court found a plaintiff sufficiently pleaded standing for injunctive relief by alleging the defendant "continue[d] to manufacture, distribute, and deceptively label and advertise" the products at issue, *id.* at *4.  *See* Mem. Opp'n Mot. Dismiss 8 (citing *Carrol*); *see also Muir v. NBTY, Inc.*, No. 15 C 9835, 2016 WL 5234596, at *10 (N.D. Ill. Sept. 22, 2016) (finding the allegation "[the] [d]efendants continue to advertise, distribute, label, manufacture, market, and sell the [p]roducts in a false, misleading, unfair, and deceptive manner" passed muster (quotation marks omitted)).  But whether a defendant continues its allegedly deceptive trade practices is irrelevant: What matters is whether a plaintiff is likely to be harmed by them again.  *See McDonnell v. Nature's Way Prods., LLC*, No. 16 C 5011, 2017 WL 1149336, at *2 (N.D. Ill. Mar. 28, 2017) ("The fact that Nature's Way markets a number of products or has been sued for making unrelated allegedly misleading claims does not matter; the issue is whether McDonnell has asserted a basis for future harm with respect to the alleged

mislabeling of Women's Alive. McDonnell is aware of this alleged deception and so can avoid the problem in the future." (citation omitted)). To accept *Carrol* and *Muir* would be to read out the likelihood of future harm requirement. Accordingly, the Court declines to follow them.

Guajardo also cites *Le v. Kohls Department Stores, Inc.*, 160 F. Supp. 3d 1096 (E.D. Wis. 2016), which provides an example of a plaintiff successfully alleging she would likely be harmed in the future by a defendant's trade practices, *see id.* at 1108. *See also* Mem. Opp'n Mot. Dismiss 8 (citing *Le*). But this case is distinguishable. There, Le did not merely allege Kohls' alleged deception was ongoing. Rather, he alleged Kohls "engage[d] in a company-wide, pervasive, and continuous campaign of falsely claiming that each of their products s[old] at far higher prices than by other merchants," *id.* at 1099 (citation omitted); *see generally id.* at 1099–100 (detailing the scheme)—one so broad, the court was "unclear just exactly what Le would be expected to be aware of in order to avoid future harm" from Kohls, *id.* at 1110 (quotation marks omitted) ("For example, should Le be aware that housewares are deceptively priced, while men's apparel is not? Should Le be aware that Kohls' holiday sales are more egregiously deceptive than their day-to-day offers?" (quotation marks omitted)). Worse, *Le* is not persuasive. Indeed, if Le had reason to suspect Kohls' purportedly deceptive trade practices tainted every product it sold, he could have just stopped shopping there. *See Johnson v. Wal-Mart Stores, Inc.*, No. 3:15-cv-775-DRH-DGW, 2016 WL 3753663, at *3 (S.D. Ill. July 14, 2016) ("[P]laintiffs know the problems associated with any product advertised as being 'Made in the USA' (and the like). That knowledge, standing alone, allows plaintiffs to avoid future harm by refusing to do business with the defendants . . . . This is so regardless of the fact that the deceptive sales practice could be used to mislabel any number of products.").

For the foregoing reasons, even if Guajardo had pleaded a deceptive trade practice under the UDTPA, her claims thereunder could not move forward.

### 3.    The Unjust Enrichment Claim

As Guajardo concedes, "[w]here a claim for unjust enrichment rests on the same improper conduct alleged in another claim, the unjust enrichment claim 'will stand or fall with the related claim.'" Mem. Opp'n Mot. Dismiss 7 (quoting *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)). Guajardo's unjust enrichment claim is based on the same conduct her ICFA and UDTPA claims are based on. *See* Second Am. Compl. ¶¶ 119–21. As those claims fall, so too does her unjust enrichment claim.

*    *    *

All three of Guajardo's claims being dismissed, the final issue is whether they should be dismissed with prejudice. Skechers believes they should, arguing Guajardo "has done nothing to cure the deficiencies inherent in her claims," Mem. Supp. Mot. Dismiss 15, and "further leave to amend would be futile," *id.* at 1. Guajardo does not respond to this argument.

"Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success," *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (citation omitted), and even if a complaint is dismissed under Rule 9(b), *see In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1313 (Fed. Cir. 2011) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1435 (3d Cir. 1997) (Alito, J.)). But under Rule 15:

> A district court may deny leave to file an amended complaint in the case of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.

*Bausch*, 630 F.3d at 562 (alteration in original) (quotation marks omitted). This rule "does not command leave be granted every time." *See Thompson v. Ill. Dep't of Pro. Regul.*, 300 F.3d 750, 759 (7th Cir. 2002) (citation omitted).

The Second Amended Complaint shall be dismissed with prejudice. As an initial matter, Guajardo does not seek leave to amend and district courts are not charged with granting leave to parties who do not seek it. *See James Cape & Sons. Co. v. PCC Constr. Co.*, 453 F.3d 396, 400–01 (7th Cir. 2006) (rejecting the plaintiff's argument that the district court was required to dismiss its complaint without prejudice "even though it did not properly request leave to amend its complaint" (citing *Coates v. Ill. State Bd. of Educ.*, 559 F.2d 445, 451 (7th Cir. 1977) ("We agree that [the district judge] correctly held the complaint insufficient. He did not abuse his discretion in denying leave to amend the complaint, because such leave was never sought. Under these circumstances, we can find no basis for disturbing his judgment in any way.")). More importantly, Guajardo has failed to cure the deficiencies the Court noted in the November 30, 2020 Order. *See, e.g.*, *Ritacca v. Storz Med., A.G.*, No. 12 C 8550, 2013 WL 5550390, at *4 (N.D. Ill. Oct. 4, 2013) (dismissing a second amended complaint that alleged an ICFA claim with prejudice because "Plaintiffs [were granted] leave to amend their first amended complaint" and "made little effort to address the deficiencies the [c]ourt clearly and explicitly directed them to correct," explaining "it would be a waste of the parties' time and of judicial resources to allow Plaintiffs another futile amendment"); *Smith v. Ill. Sch. Dist. U-46*, 120 F. Supp. 3d 757, 777 (N.D. Ill. 2015) ("Having amended his complaint twice in response to two previous motions to dismiss, Smith has had three opportunities to plead his claims, so dismissal of his federal claims with prejudice and without an opportunity to amend is warranted."). It is clear she cannot state a claim for relief.

## CONCLUSION

For the foregoing reasons, Defendant Skechers USA, Inc.'s motion to dismiss, ECF No. 24, and motion for leave to file a reply in support thereof, ECF No. 28, are GRANTED. The Clerk is directed to file the reply, ECF No. 28-1, on the docket, enter judgment, and close this case.

Entered this 21st day of September, 2021.

s/ Sara Darrow<br>
SARA DARROW<br>
CHIEF UNITED STATES DISTRICT JUDGE